[No. G038430. Fourth Dist., Div. Three. Mar. 24, 2008.]

JOHN LUCKETT, Plaintiff and Appellant, v.
WILMA A. PANOS, as Executrix, etc., Defendant and Respondent.

COUNSEL

John Luckett, in pro. per., for Plaintiff and Appellant.

Hollins & Levy, Byron S. Hollins and Laura M. Levy for Defendant and Respondent.

OPINION

**SILLS, P. J.**—Our opinion today results in a partial win for appellant John Luckett. As we explain below, courts do indeed have the statutory authority

to lift a prefiling order entered against an individual adjudicated to be a vexatious litigant. And, while we affirm the trial court's order declining to lift a prefiling order against John Luckett *this time*, we also provide a roadmap as to how Luckett, or any other a person already adjudicated to be a vexatious litigant, can succeed in having that determination lifted.

## I. THE ISSUE OF THE "PERPETUAL" VEXATIOUS LITIGANT

Two cases have previously touched on (though not directly tackled) the general issue of the permanency of a vexatious litigant determination (see Code Civ. Proc., § 391, subd. (b)(4)[1]), a determination which can entail a "prefiling order" requiring a vexatious litigant to obtain permission before he or she may file any further litigation (see § 391.7, subd. (a)). The two cases are *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43 [61 Cal.Rptr.2d 694] and *PBA, LLC v. KPOD, Ltd.* (2003) 112 Cal.App.4th 965 [5 Cal.Rptr.3d 532].

*Wolfgram* is a sustained examination of the general operation of the vexatious litigant statutes in light of the right to petition for redress of grievance under the state and federal Constitutions. The case squarely held that the operation of California's vexatious litigant statutes do not offend the right to petition—basically because a vexatious litigant still retains the right to bring lawsuits even after a vexatious litigant determination. Adopting Professor Tribe's analogy of the vexatious litigant statutes as a kind of license or permit system to manage " 'competing use of public facilities,' " the *Wolfgram* court explained that the vexatious litigant statutes are narrowly drawn and reasonable in promoting the conservation of public judicial resources. (*Wolfgram v. Wells Fargo Bank, supra*, 53 Cal.App.4th at p. 60.) Being narrowly drawn, California's vexatious litigant statutes *allow* a vexatious litigant to continue to file lawsuits. They simply provide that the litigant may be required to post a bond in cases where "there is not a reasonable probability" that the vexatious litigant will prevail. (*Id.* at pp. 48–49.) Given the reasonable-probability-of-not-prevailing standard, the bond requirement is not even as onerous as, say, a person who had been determined by the National Park Service to be a chronic litterer being required to post a deposit before being allowed to check in to a national park. (If the parallel were exact, the park service would also have to make a showing that there was "no reasonable probability" that our chronic litterer would leave the campsite reasonably tidy.) In perhaps the opinion's most memorable passage, the *Wolfgram* court stated that "When a vexatious litigant knocks on the courthouse door with a colorable claim, he may enter." (*Id.* at p. 60.)

---

[1] All further undesignated statutory references will be to the Code of Civil Procedure.

As noted, the issue of possibly rescinding a vexatious litigant determination was only touched on, but not squarely addressed, in *Wolfgram*. The vexatious litigant there, apparently as part of a shotgun blast of constitutional contentions, asserted that vexatious litigant status was a "form of 'attainder' " in that the vexatious litigant status supposedly " 'deprived' " him of " 'his civil rights *in perpetuum*.' " (*Wolfgram v. Wells Fargo Bank, supra*, 53 Cal.App.4th at pp. 61–62, fn. 11.) But that assertion was not developed in a proper heading or with any analysis, so the court considered the point waived. (*Ibid.*)

On the other hand, there is nothing in the *Wolfgram* analysis that suggests any *constitutional* problem with a vexatious litigant determination being permanent. If the vexatious litigant is still being afforded his or her right to petition in the immediate aftermath of a vexatious litigant determination and imposition of a prefiling order, he or she necessarily will retain those same constitutional rights for the indefinite future thereafter. The vexatious litigant status simply subjects the person in that category to the possibility of a reasonable restriction on his or her right to sue in propria persona, namely the possibility of a bond requirement.

*PBA*, on the other hand, arose out of the specific context of one judge entering an order rescinding a previous judge's vexatious litigant determination, so the issue was more squarely presented. The *PBA* court appears to have read *Wolfgram* for the proposition that a vexatious litigant determination may indeed be constitutionally permanent (a natural, though only implicit, reading of *Wolfgram*). But the *PBA* court clearly found that proposition "troubling." (*PBA, LLC v. KPOD, Ltd., supra*, 112 Cal.App.4th at pp. 975–976.) The *PBA* court said: "Although section 391.7 does not *absolutely* exclude the 'pro per' litigant from the courts, we believe fundamental fairness requires the 'vexatious litigant' brand be erasable in appropriate circumstances." (*Id.* at p. 976, original italics.) The *PBA* court cited no authority for its belief.

Strictly speaking, though, it would be an incorrect reading of *PBA* to say that the case stands for the blanket proposition that a vexatious litigant determination is, in that court's word, "erasable in appropriate circumstances." First, in the very next paragraph after the "fundamental fairness" sentence, the court recharacterized what it had just said was a "requirement" into a mere conditional possibility, with a sentence that cast doubt on its "fundamental fairness" declaration. (See *PBA, LLC v. KPOD, Ltd., supra*, 112 Cal.App.4th at p. 976 ["even if it is theoretically possible to remove the brand of vexatious litigant"].) In that same vein, within three paragraphs of the fundamental fairness statement, the *PBA* court devalued what it had said was a requirement of erasability to a mere assumption of a possibility. (See *ibid.*

["Assuming Judge Gale had the power to reverse Judge Morgan's order declaring Kennedy to be a vexatious litigant, he would at least have had to find a change in facts or circumstances showing the finding was no longer appropriate."].)

In any event, building on the assumption that a vexatious litigant "brand" *could* be erased, the *PBA* court analogized the vexatious litigant statutes to an injunction under section 533. That analogy logically required the vexatious litigant to make a showing of "a change in facts indicating a mending of his ways or conduct to support a reversal of the original determination." (*PBA, LLC v. KPOD, Ltd., supra*, 112 Cal.App.4th at p. 976.) In the case before the *PBA* court, however, the latter judge's rescinding order was not based on anything that "amounted to a change in facts or circumstances sufficient to reverse the vexatious litigant order." (*Id.* at p. 977.)

▇ In light of the court's subsequent hedging of its fundamental fairness language, the rule to be properly derived from *PBA* is a conditional one: While a vexatious litigant determination may, or may not, be erasable, *if* it is erasable, erasure requires substantial evidence that the vexatious litigant has mended "his ways or conduct." (See *PBA, LLC v. KPOD, Ltd., supra*, 112 Cal.App.4th at p. 976.)

Which brings us to the specifics of the case at hand. This appeal has its origins, ironically enough, in a vexatious litigant's own reading of *PBA*, which prompted a trial court motion on his part to rescind a prior vexatious litigant determination. The forum he selected for his motion was this case against Wilma Panos, as executor of the estate of a deceased attorney who once represented the vexatious litigant.[2] The trial court denied the motion, and this appeal is from the order of denial.

It falls our lot to complete the arc that *PBA* began—at least for the first time in a published opinion.[3]

---

[2] We will explore the problem of the appropriate forum below.

[3] A law review article, Rawles, *The California Vexatious Litigant Statute: A Viable Judicial Tool to Deny the Clever Obstructionists Access?* (1998) 72 So.Cal. L.Rev. 275, hereinafter "Rawles article," notes that one panel of the Court of Appeal removed the name of one person previously determined to be a vexatious litigant from the Judicial Council's prefiling list in an unpublished opinion. (Rawles article, *supra*, 72 So.Cal. L.Rev. at p. 303, fn. 167.) That unpublished opinion was decided at a time when the default presumption was against publication. (See Cal. Rules of Court, former rule 976(c) (as it stood in 2005 and before) ["No opinion . . . may be certified for publication . . . unless . . . ."].) Today the rule is different. (See Cal. Rules of Court, rule 8.1105(c) ["An opinion . . . should be certified for publication . . . if . . . ."].) Presumably the prior unpublished opinion would have been published under today's rules.

First, we note that the vexatious litigant statutes have a real world effect in only two possible ways: Either the vexatious litigant is required to post security in litigation already ongoing and will lose if he or she doesn't (§§ 391.1–391.6), or is required to obtain permission of a presiding justice of the court where new litigation is to be filed (§ 391.7), or both.

The first way—a requirement of posting security—is wholly dependent on some affirmative action taken by the defendant. The defendant must make a motion to have the court require the plaintiff to post security. (§ 391.1.) If the defendant takes no action, any prior determination that a person is a vexatious litigant is nothing more than a tree falling in a forest with no one around to hear the crash.

The second way a vexatious litigant determination may actually have a real world impact—the requirement of a prefiling order—is different. It can be initiated by the court on its own, or by a party. (§ 391.7, subd. (a).) Thus a court *may*, even upon its own motion, enter a "prefiling order" requiring a person to first obtain permission of the relevant presiding justice before filing any litigation in that presiding justice's court, and if it does so, disobedience to *that* order by the person may be punished by contempt. (§ 391.7, subd. (a).) Further, the Judicial Council is charged with maintaining a list of persons against whom prefiling orders have been made. (§ 391.7, subd. (e).)

We should note here that there is nothing in the vexatious litigant statutes which requires the Judicial Council to maintain a list of persons who were, in the process of the adjudication of a defendant's motion to require *security*, adjudged to be vexatious litigants. (Compare §§ 391–391.6 with § 391.7, subd. (e).) Under the statute, the official list of vexatious litigants is taken from prefiling orders made pursuant to section 391.7, as distinct from trial court orders requiring the furnishing of security pursuant to section 391.1 et seq.

■ The definition of an injunction is found in section 525: "An injunction is a writ or order requiring a person to refrain from a particular act. It may be granted by the court in which the action is brought, or by a judge thereof; and when granted by a judge, it may be enforced as an order of the court." In *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1160 [69 Cal.Rptr.2d 692], the court also noted that injunctions can include the requirement to do an act, as well as not to do an act: "In short, an injunction may be more completely defined as a writ or order commanding a person either to perform or to refrain from performing a particular act." (See also *Comfort v. Comfort* (1941) 17 Cal.2d 736, 741 [112 P.2d 259] [passing reference to injunction as being an order " 'to do or desist from certain action' "].) Most litigation over injunctions does not involve the definition of an injunction as such, but is over the need that injunctions be sufficiently

*definite* to be enforceable. (See *Pitchess v. Superior Court* (1969) 2 Cal.App.3d 644, 651 [83 Cal.Rptr. 35] [importance of injunction being definite enough to provide a standard of conduct for those whose activities are to be proscribed, as well as a standard for the court to use in ascertaining an alleged violation of the injunction].)

■ By these standards, there is no question that the prefiling order contemplated by section 391.7, subdivision (a) *is* an injunction. It is, literally, an order requiring Luckett to refrain from doing a particular act—filing any new litigation without certain permission. It is punishable by contempt. And it is sufficiently definite to be punishable by contempt. Therefore, as an injunction, the prefiling order may be modified as provided in section 533, which articulates three independent bases on which a modification of an injunction may be predicated—(1) change in the facts, (2) change in the law, or (3) ends of justice.

The exact language of section 533 is: "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order."

(This is the completion of the arc which *PBA* began. It turns out that there is no need to rely on any brooding fundamental fairness in the sky for the proposition that a vexatious litigant determination may be erased. At least in regards to prefiling orders, the Legislature has already provided for erasure by a combination of statutes, read together, and taken as a whole.)

■ We note further: Since, under section 391.7, the official list of vexatious litigants kept by the Judicial Council is wholly dependent upon the entry of a prefiling order by a California court somewhere, the official "status" of being a vexatious litigant, as reified on the official Judicial Council list, is therefore also erasable under section 533—at least when *done in conjunction with an application for the lifting of a prefiling order pursuant to section 391.7.*[4]

---

[4] Alas, there is nothing a court can do—short of rewriting the statute—to erase the fact that a person may, at any given time, fit within the definition of a vexatious litigant set forth in section 391, namely subdivision (b)(4). That definitional category includes any person who: "Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." But, as we said, the mere fact that a person is described within one of those four categories carries with it no practical consequences in and of itself. The person must file

However—to throw a couple metaphors into a blender here, just because a vexatious litigant *can* change his spots does not mean he or she has turned a new leaf. Take this case, for example. As in *PBA*, where the vexatious litigant did not provide substantial evidence of a mending of his ways, neither is any such evidence present here. More particularly, as we shall explain below, mere success in some litigation by the vexatious litigant after a determination of vexatious litigant status under section 391.7 is *not* evidence of a mending of the ways.

## II.   THIS CASE

This case (Orange County Superior Court case No. 785802) is the same litigation as was the subject of this court's unpublished opinion in *Luckett v. Panos* (Jan. 22, 2002, G027149) [nonpub. opn.] [2002 WL 80640], hereinafter *Luckett II*. Because *Luckett II* is relevant to the present case as a matter of law of the case and collateral estoppel, we may cite the opinion now in this case. (See Cal. Rules of Court, rule 8.1115(b)(1).)

In *Luckett II*, this court reversed the trial court's order refusing to set aside a default judgment obtained by plaintiff John Luckett against "a now deceased Nevada lawyer." (*Luckett II, supra,* No. G027149 [nonpub. opn.].) Basically, the Nevada lawyer, Bill Andrews, was never properly served, because the letter mailing the complaint to him was misleading, suggesting that he was being served as a corporation's agent for service of process and not as an individual. We also noted that the default judgment was for $159,000, yet that judgment was based on a legal malpractice claim derived

current litigation in which "there is not a reasonable probability that he will prevail" (§ 391.1). And we should note further that the definition set forth in subdivision (b)(4) is not quite as permanent as it might seem on first reading. The definitional category is qualified by a requirement that the current "action" be "based upon the same or substantially similar facts, transaction, or occurrence" as the previous action in which the litigant was declared to be a "vexatious litigant" (§ 391, subd. (b)(4)). That means that as long as a vexatious litigant stays away from bringing litigation which is "substantially similar" to the litigation that got him or her declared a vexatious litigant in the "previous" action, subdivision (b)(4) should not apply. The other three categories, in subdivisions (b)(1) through (b)(3) of section 391, do not carry even the possibility of an ongoing ontological stigma. Subdivision (b)(1) has a kind of seven-year statute of limitations; subdivision (b)(2) involves only repeated attempts to relitigate what has just been litigated in the current action (in which the definition applies), and subdivision (b)(3), given its use of the present tense word "files," also appears to apply only to a current action and not a previous action. Finally, as noted above, even if any of the definitional categories did create some sort of ongoing *status* (a person *is* a vexatious litigant the same way that a person who was convicted of first-time poaching in the Middle Ages and branded for it would always have that brand on his person), that status, independent of the prefiling order statute, would only have a palpable effect on the person if a defendant made a motion for security (or if the defendant or court sought to impose a prefiling order based on that status), and only then if the defendant showed that there was no reasonable probability the person would prevail against that defendant.

from the lawyer's handling of Luckett's bankruptcy such that Luckett lost his car. The high amount of claimed damages indicated a serious overinflation of damage claims. We may take it as given that the car which the lawyer's alleged malpractice cost Luckett was not one in which Luckett had a great deal of equity. As a matter of law of the case, Luckett is now bound by that set aside order. He didn't get to keep that $159,000 judgment (later inflated to more than $200,000 by assertion of interest and attorney fee claims). As a matter of collateral estoppel, he may not challenge this court's earlier determination that he obtained a default judgment against a defendant who was never properly served.

After the January 2002 *Luckett II* decision was final, the default judgment obtained by Luckett was apparently[5] vacated. The clerk's register of actions report in this appeal, however, contains no entries after the January 30, 2003 entry for any "judgment." Apparently, Andrews's estate was content to let well enough alone, and in this appeal now Andrews's estate informs this court that after the January 2003 order vacating the default and default judgment, nothing further occurred as regards the estate.[6]

The case was getting so old, however, that the clerk of the superior court contemplated the destruction of the files. In July 2005, then, Luckett filed ex parte for, in substance, an order vacating the "finding" he was a vexatious litigant and also for an order "instructing the clerk of the court not to destroy files." The points and authorities supporting the order to vacate the vexatious litigant finding made a number of references to the *PBA* case. Judge McEachen, sitting in that day for Judge Brenner, found "no basis" for granting the ex parte application. Luckett then wrote a letter to Judge Brenner asking for reconsideration. On July 13, 2005, Judge Brenner heard argument from Luckett and *granted* the request to *re*consider, but, having reconsidered it, stated the court "lack[ed] jurisdiction and ha[d] no basis" to grant the ex parte request.

---

[5] The record submitted by appellant John Luckett is a comparatively small one, and does not contain many of the documents listed in the register of actions report prepared by the clerk. The register lists an order "vacating default and default judgment" made in January 2003, that is, about a year after the initial filing of *Luckett II*. That order vacating the default is one of those missing documents.

[6] This is an example of the "chilling effect" that a party may encounter when dealing with a vexatious litigant who enjoys in forma pauperis status. Short of holding the person in contempt, such a litigant, proceeding in propria persona, can continue to litigate virtually cost free, which means he or she can file a frivolous appeal and get away with it. In this case, for example, normally the estate of Bill Andrews would have had every incentive to wrap the case up by obtaining a final judgment of dismissal. But that very act would, given the predictability of an appeal by Luckett, only have caused the estate to incur yet more attorney fees, which the estate would rationally figure could not be recouped from Luckett.

However, the very next week, on July 20, Judge Brenner heard further argument "to allow the Court to review case law as cited in the ex parte papers." The record indicates that Judge Brenner heard argument again on August 23, this time on a request by Luckett to "stay Vexatious Litigant status in Santa Monica court." That specific request was denied, but the court set for mid-September 2005 a "hearing for further review" of "the ex parte" to vacate the vexatious litigant finding and to prevent destruction of the files. That "further review" was apparently actually heard the following month, and both issues were taken under submission.

Nothing happened in the case during the year 2006. The very next event in the litigation (confirmed by the clerk's register of actions in this appeal) was a February 2007 filing, headed: "ex parte application for an immediate ruling(s) on motion(s) to vacate finding(s) of John Luckett having been declared a vexatious litigant; req. for order to clerk to preserve entire files from destruction." We will discuss the facts below, when we discuss the supporting declaration.

On March 14 Judge Brenner heard argument on the application. Only Luckett was present. Judge Brenner *granted* the request to prevent the destruction of the file in the case. He denied the motion to vacate the finding that Luckett was a vexatious litigant, but without prejudice. (The denial without prejudice is an implied recognition of the *PBA* paradigm that vexatious litigant status should be "erasable in appropriate circumstances.") The minute order denying the request was filed that very day, and Luckett's notice of appeal from that order was filed on March 27, less than two weeks later.

## III.   LUCKETT'S PRIOR APPELLATE CASES

Before confronting the issues raised by Luckett's appeal, we take this opportunity to recount all previous appellate decisions involving John Luckett.

In *In re Luckett* (1991) 232 Cal.App.3d 107, 110 [283 Cal.Rptr. 312], hereinafter *Luckett I*, this court, acting on its authority under section 391, found that John Luckett "is a vexatious litigant," and, acting on its authority under section 391.7, imposed on Luckett a prefiling order barring Luckett from filing any "new litigation" without leave of the presiding judge of the court where that new litigation is to be filed. The finding that Luckett was a vexatious litigant was based on the fact that he had filed "at least 43 different appeals or writ petitions in this court while acting in propria persona," and that in 34 of those proceedings "he had filed unmeritorious motions, pleadings, or other papers, or engaged in other tactics that [were] frivolous." (232 Cal.App.3d at p. 108.) We specifically noted that Luckett had "been relieved

of the obligation to pay filing fees because of his statutory right to forma pauperis relief." (*Id.* at p. 110.)

In the early 2000's came the unpublished decision in *Luckett II*, which we have described above. *Luckett II* is significant to our purposes in this case because it involved some initial success—the obtaining of a large default judgment—even though that success later evaporated when this court learned that Luckett had served the defaulted defendant in a misleading manner.

Last year, our colleagues in the Second District had occasion to decide *Luckett v. Keylee* (2007) 147 Cal.App.4th 919 [54 Cal.Rptr.3d 718], hereinafter *Luckett III*. *Luckett III* is likewise significant to our purposes in this case because it involved some preliminary procedural success on Luckett's part in litigation.

In *Luckett III*, Luckett sued a group of Nevada lawyers for improperly trying to enforce a Nevada judgment against him.[7] The trial court initially determined that the action lacked merit because the complaint did not allege that Luckett was affected by the Nevada judgment, hence concluded that the action lacked merit, and, accordingly, required that Luckett post a $25,000 bond. However, on a reconsideration motion, Luckett produced documents showing that he was indeed affected by the Nevada judgment. While the trial court still denied the reconsideration motion, Luckett soon met with the success of having that determination reversed in a writ petition. Specifically, the appellate court reversed the order denying reconsideration. In response, the trial court lowered the bond amount to $3,500. That particular order, however, was not reversed, and Luckett never posted even that bond, so the case was dismissed. (*Luckett III, supra*, 147 Cal.App.4th at p. 923.) Then the Nevada attorneys sought costs and attorney fees for their default win, which were both granted. Luckett scored his second success in the litigation when, in an appeal from the cost and attorney fee order, the appellate court reasoned there was no authority to award fees, even though it upheld the cost order. (*Id.* at pp. 926–927.)

## IV.   APPEALABILITY

As noted above, there is no final judgment in this case. Ironically, it is a reasonable inference that Andrews's estate apparently decided that obtaining one would itself only engender an appeal.

The absence of a final judgment creates a problem in terms of this court's jurisdiction to hear Luckett's appeal. We do not, strictly speaking, have an

---

[7] Andrews or his estate is not mentioned in the opinion.

order after a final judgment, as might otherwise make the order appealed from appealable under section 904.1, subdivision (a)(2).

■ However, we *do* have an order refusing to dissolve an injunction, which is also appealable under section 904.1, subdivision (a)(6). ■ As demonstrated above, a *prefiling order* against a vexatious litigant meets the definition of an injunction.[8] The status of being a vexatious litigant insofar as it entails being on the official list of litigants against whom prefiling orders have been entered *as maintained by the Judicial Council* pursuant to section 391.7, subdivision (e), is an "incident" to the entry of the prefiling order.

Therefore, under the rule of liberal construction of notices of appeal (Cal. Rules of Court, rule 8.100(a)(2) ["The notice is sufficient if it identifies the particular judgment or order being appealed."]), we deem Luckett's appeal to be from an order refusing to dissolve the permanent (prefiling) injunction this court issued in *Luckett I*, which was necessarily in front of the trial court when it denied Luckett's request. We thus have appellate jurisdiction over the denial of the request to dissolve that injunction.

## V. WHETHER A CHANGE OF CIRCUMSTANCES WAS SHOWN

John Luckett's trial court application to have the "finding" of his being a vexatious litigant rescinded was based on the following points:[9]

(1) The passage of time. Luckett was a mere 25 years old when this court declared him to be a vexatious litigant—"just a kid then"—in the words of his declaration—and he "didn't know as much about the law, and the rules of court then" as he knows now.

(2) He won a "$200,000" default judgment in the very case before us.[10]

(3) Back in 1991, this court let him file 43 separate writs and appeals in the period of one and one-half years before declaring him to be a vexatious litigant, and in fact waived the filing fee for all those writs and appeals.

---

[8] Moreover, such an order operates indefinitely into the future, so there is no question about its permanency, thus allowing us to dispense with the problem of whether section 904.1, subdivision (a)(6) only operates as regards to permanent injunctions, as distinct from both permanent and pendente lite injunctions. (Cf. *Concerned Citizens Coalition of Stockton v. City of Stockton* (2005) 128 Cal.App.4th 70, 81–82 [26 Cal.Rptr.3d 735].)

[9] In quoting from Luckett's declaration and brief, we have edited his syntax and spelling, and changed his tendency to write in all capital letters much of the time to normal capitalization.

[10] Luckett submitted a copy of a judgment by default which he filed in 2002 based on the 1999 default. Luckett increased the original judgment by $43,000 in interest and $10,000 in *attorney* fees.

(4) During the past 15 and one-half years, the Orange County Superior Court has granted Luckett's requests to file "at least 20 lawsuits or more" and he had "prevailed on all of them, or settled out of court except for a few here and there, which were dismissed" because Luckett could not post the required bond under the vexatious litigant statutes.

(5) A determination of being a vexatious litigant is, in Luckett's opinion, "a medical finding for which no competent doctor ever made." Rather, the original decision in *Luckett I* declaring him to be a vexatious litigant was a decision made by "(3) court of appeals judges, as an attempt to blockade" him from "coming to court." In his brief on appeal, Luckett elaborates on this point, asserting that vexatious litigation requires a medical opinion, because it is "a disease, such as a compulsive gambler!"

We must conclude that none of these reasons show a change of circumstances from those circumstances that first prompted this court's entry of a prefiling order, or otherwise show that the interests of justice would require a vacation of that order.

To take the most obvious point first, Luckett's analogy to vexatious litigation being a "mental disease"—if we were to take the argument at face value—is an argument, under *these* circumstances, *against* lifting a determination of vexatious litigant status because it shows no change of status. If a propensity to vexatious litigation were indeed a mental disease, then once a person were adjudicated a vexatious litigant, under Luckett's logic, a doctor's certificate would be required to *erase* the determination.

Of course, that's not Luckett's point at all. His point is that a doctor's certificate should have been necessary *before* he was declared a vexatious litigant in the first place. But that argument also fails, because it suggests that vexatious litigation is the exclusive province of the mentally disordered.

To be sure, of course, many vexatious litigants probably do suffer from some sort of mental disorder, a fact that trial court staff around the state would appear to have firsthand knowledge.[11] On the other hand, there is nothing in the statutes, either the definitional categories of section 391 or in the prefiling statute, section 391.7, that necessarily confines vexatious litigation to those with mental disorders. And it is perfectly imaginable that a very

[11] One Web site accessible in February 2008, <thefreelibrary.com> (as of Mar. 24, 2008), has a posting from an article from the Los Angeles Daily News, February 25, 1996, *State Throws the Book at "Vexatious Litigants,"* which quotes an executive at a Santa Clara County Court as saying, about vexatious litigants, that " 'Many of them are individuals who you wonder about their mental health.' " (Boatman, *State Throws the Book at "Vexatious Litigants,"* L.A. Daily News (Feb. 25, 1996) <thefreelibrary.com> [as of Mar. 24, 2008].)

sane, if wrongfully minded person—Conan Doyle's fictional Moriarty comes to mind—who would be perfectly willing to pursue a course of vexatious litigation in the course of some ulterior purpose.[12]

Returning to the other facts in Luckett's supporting declaration, we find that his first listed point—the passage of time—does not show a mending of the ways at all. All Luckett's declaration shows is that, instead of devoting his life to something productive, he has spent the last 16 years suing people. That fact only *confirms* the very trait of character on which the determination of vexatious litigant was first based.

The second point—the obtaining of a default judgment—was a blatant attempt to mislead the trial court. Luckett did not mention that his "$200,000" default judgment was ordered set aside in *Luckett II*, and that it was set aside precisely because he had misled the defendant into thinking he had only been served in his capacity as agent for service of process.

A similar lack of regard for the true facts is shown in the third point, concerning the fact that this court did not require Luckett to post filing fees in the spate of appeals that led to the initial determination of vexatious litigant status in *Luckett I*. The *Luckett I* opinion explicitly noted that the reason Luckett was able to file 43 writs and appeals before we could stop him was because he was using his in forma pauperis status to avoid paying filing fees. If Luckett actually had to pay his own filing fees, we doubt that he would have filed so many cases in the first place.

The fourth point, like the first, only confirms the correctness of the original vexatious litigant determination, because it shows that Luckett has spent a good portion of his time over the last 16 years suing people. To be sure, his declaration avers that he was able to obtain permission from presiding judges to file litigation, but that fact does not show a mending of the ways. Rather, it only shows that the vexatious litigant statutes are operating the way they are supposed to operate. By the same token, the fact that some of the litigation which Luckett has brought resulted in settlement proves nothing, because some defendants may have paid token amounts to make the litigation go away—Luckett himself acknowledged that very fact at oral argument—or Luckett may have dismissed it as part of a settlement. Indeed, one legal commentator notes that settling suits brought by vexatious litigants has the effect of preventing judges *later on* from realizing just how frivolous those *earlier* suits might have been. (Rawles article, *supra*, 72 So.Cal. L.Rev. at p. 283.)

---

[12] And indeed the same court executive quoted in footnote 11 above went on to say that " 'We've had vexatious litigants who are very bright individuals. Their ability to use and understand the law is impressive.' " (Boatman, *State Throws the Book at "Vexatious Litigants,"* L.A. Daily News, *supra*, <thefreelibrary.com> [as of Mar. 24 2005].)

## VI.  HOW A CHANGE OF CIRCUMSTANCES MAY BE SHOWN IN THE FUTURE

### A.  Relevant Criteria

■  So, the trial court was clearly correct to deny the application.

■  However, as noted, the denial was "without prejudice," and, as we have explained, a prefiling order under section 391.7, being an injunction, is not ipso facto permanent. Luckett might yet be able to show a change of circumstances under section 533 justifying the lifting of the section 391.7 prefiling order. For the benefit of any future trial judges faced with such an application from Luckett or a similar litigant, let us offer these observations as to some of the *factors* that necessarily bear on whether a vexatious litigant had "mended his ways."

First, it goes without saying the applicant must show a propensity for *honesty* in his or her application. That means an *accurate* confrontation with the facts on which the prior vexatious litigant finding was made, as well as intervening facts that might not put the application in a favorable light.

Honesty also means, in those cases where a vexatious litigant claims in forma pauperis status, that the applicant must have, as he or she is required to do by statute, notified the court of any change in financial circumstances or settlements received that would enable him or her to pay even a portion of the fees otherwise waived by the in forma pauperis status. (See Gov. Code, § 68511.3, subd. (d)(1) ["A litigant proceeding in forma pauperis shall notify the court within five days of any settlement or monetary consideration received in settlement of this litigation and of *any other change in financial circumstances* that affects the litigant's ability to pay court fees and costs." (Italics added.)].)

Second, the applicant should show some genuine *remorse* for the costs of litigation inflicted on the defendants who were the object of previous lawsuits. Let us here note the major costs that obsessive vexatious litigants inflict on others: They force their opponents to incur unnecessary expense defending themselves (one insurance company spent $200,000 defending itself against a vexatious litigant while a public university spent $132,000 defending itself against the same litigant (see Rawles article, *supra*, 72 So.Cal. L.Rev. at pp. 281–282)) and consume public judicial resources better devoted elsewhere (*id.* at pp. 280–281).

Third, in the same vein as section 68511.3, subdivision (d)(1)'s *requirement* that in forma pauperis litigants notify the court within five days of any

changed financial circumstances allowing them to pay part or all of their filing fees, an applicant to erase vexatious litigant status should, consistent with his or her financial situation, show some genuine effort at *restitution* toward the previous victims of his litigation, including actual payment of cost orders made by the courts in that litigation.

It should be noted here that the *combination* of (1) in forma pauperis status, which can make a person, to use the lawyer's phrase, "judgment-proof," (2) the sort of mindset that leads to a declaration of vexatious litigant status, *and* (3) the inclination to file cases in propria persona, is a truly horrific combination. It means that an individual who fits within in forma pauperis status may use a typewriter as a weapon, filing lawsuits (even if he or she has to obtain permission first) at virtually no cost to himself or herself, and without fear of ever being required to pay sanctions or an adverse judgment.

■ Fourth, the applicant must actually give up the habit of suing people as a way of life. It is not some *success* in litigation, even after a person is adjudged to be a vexatious litigant, that shows a change of circumstances. Just the opposite is the case. Even some interim procedural success may simply encourage the *habit* of litigation as a way of spending one's free time.

We emphasize this point of law: As the *Wolfgram* court demonstrated, the vexatious litigant statutes *already* make ample provision to protect the vexatious litigant's right to petition and obtain redress in the courts. A vexatious litigant who has a *genuinely meritorious lawsuit* will not be subject to an order to post security, and will have no problem obtaining a presiding judge's permission in the first place.

Daytime television in the early 21st century has been full of "judge shows," where ordinary people bring a dispute for decision before a celebrity jurist. If nothing else, those shows illustrate that life is full of occasions when a lawsuit—even a legally meritorious one—can be brought over the pettiest of circumstances. People with too much time on their hands and a propensity to sue people will always find occasion to bring a lawsuit. A *real* change of circumstances may entail efforts at obtaining gainful employment.[13]

---

[13] In his briefs, Luckett speculates that he could not pursue a career as a lawyer because of the vexatious litigant determination. Not so. There are lawyers now in good standing with the California State Bar who have been convicted of felonies, but who, upon demonstrating their rehabilitation, went to law school and have pursued productive careers at the bar. The fact that Luckett has been adjudicated a vexatious litigant should not, *by itself*, prevent him from, in the future, becoming a lawyer upon a proper showing of rehabilitation. If convicted felons can do it, so can Luckett.

As the court in *Wolfgram* cogently noted, "Most people never sue anybody." (*Wolfgram v. Wells Fargo Bank, supra*, 53 Cal.App.4th at p. 58.)[14]

### B. The Problem of the Correct Venue

We now come to the final problem as regards the possible lifting of a vexatious litigant prefiling order under section 391.7—where? At oral argument at the trial level, Judge Brenner openly speculated as to whether his court, in this case, was the correct forum for Luckett to bring his motion to have his vexatious litigant status lifted. Nevertheless, despite his doubts, he entertained the motion, patiently heard oral argument, and ruled.

For the benefit of future cases, however, we observe that the statutes, read together and as a whole, indicate that any attempt to erase a vexatious litigant prefiling order should be brought in the forum that originally entered the prefiling order.

First, the text of section 391.7 indicates that a court (a) might enter such a prefiling order in the ordinary course of some given litigation involving a given defendant or (b) might, as this court did in *Luckett I*, enter such an order on its own motion, in response to many cases brought by a vexatious litigant.[15] In the latter situation, though, there is no traditional adversarial proceeding between two litigants generating the section 391.7 prefiling order. Rather, there is an administrative proceeding action by the court itself.

Second, the text of section 533[16] opens with the qualifying clause, "In any action" and section 391, subdivision (a) indicates that "action"—at least for

---

[14] Now—we must be clear. As the *Wolfgram* opinion shows, the vexatious litigant statutes are constitutional because they allow the vexatious litigant to keep on suing. And after our opinion today John Luckett will retain the right to file as many lawsuits in the next 16 years as he has in last 16. The statutory standard, however, is a "change of circumstances" or the "interests of justice." And neither of those will be met unless John Luckett mends his ways and *stops* suing people in propria persona. If he is really injured and has a truly meritorious case, he will find that there is no shortage of able, competent lawyers in this state who will represent him.

[15] The caption in *Luckett I* was, after all, "In re Finding of John Luckett as a Vexatious Litigant," and the decision arose out of a written order issued by this court notifying Luckett that this court was then "considering" entering a prefiling order under section 391.7. (*Luckett I, supra*, 232 Cal.App.3d at pp. 108–109.)

[16] The statute reads in its entirety: "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order." (§ 533.)

purposes of the vexatious litigant statutes—is "any civil action or proceeding . . . in any state." Now, to read "In any action" in section 533 to refer to *any* civil case at all would be absurd, no matter what the context. If, for example, in *A v. B*, A obtains an injunction against B, B cannot seek to lift that injunction based on changed circumstances in an unrelated "action," say, *M v. X*. Obviously the "action" referred to in section 533 is the very action which generated the injunction in the first place.

It follows, then, that the proper court for an individual seeking to have a section 391.7 prefiling order erased is the very court that entered it in the first place. In the case before us, for example, Luckett should have brought his request for erasure of the prefiling order to *this* court, and the "action" in which he would have brought would have been No. G011207 (*In re Luckett* (July 11, 1991, G011207))—the very proceeding which originated the prefiling order.[17] (Alternatively, if Luckett wanted to appeal from a judgment which ordinarily *this* court—Fourth District, Division Three—would consider, he could bring his request for erasure in conjunction with his application to the presiding justice of this court for permission to file *that* appeal. In any event, his request to lift the injunction represented by the prefiling order could only be considered by the court that originated that injunction.)

## VII.  CONCLUSION

Finally, we note that at oral argument, Luckett reiterated a point also made in his briefs: He does not want to "die a vexatious litigant." The members of this court heartily share that goal.

At age 41, there is still time for John Luckett to change and show cause to have the prefiling order lifted. If, after a decent interval—certainly no less than four years (which is less than a fourth of the time that he has already spent under the prefiling order)—he can show that he has stopped his obsessive litigation and shown, as laid out in this opinion, that he has genuinely "mended his ways," this court will welcome the occasion to vacate its 1991 prefiling order.

For the moment, though, that order must remain in effect. Respondent estate of Bill Andrews is to recover its costs on appeal.

---

[17] At the very least bringing the request in the right court spares other litigants—such as Bill Andrews's estate here—the need to incur fees when they are not connected with the request to erase the prefiling order.

Assuming our decision today remains final, Luckett may begin his rehabilitation by actually paying the costs incurred by the estate in this appeal.

Rylaarsdam, J., and Bedsworth, J., concurred.

A petition for a rehearing was denied April 23, 2008, and appellant's petition for review by the Supreme Court was denied June 11, 2008, S163048.