183 Cal.App.4th 545 (2010)
107 Cal. Rptr. 3d 419
JOSEPH L. SHALANT, Plaintiff and Appellant,
v.
THOMAS V. GIRARDI et al., Defendants and Respondents.
JOSE CASTRO, Plaintiff and Respondent,
v.
JOSEPH L. SHALANT, Defendant and Appellant.
Nos. B211932, B214302.
Court of Appeals of California, Second District, Division One.
April 5, 2010.
As modified April 23, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*548 Law Offices of Brian A. Yapko and Brian A. Yapko for Plaintiff and Appellant.
Joseph L. Shalant, in pro. per., for Defendant and Appellant.
Girardi I Keese and Shawn J. McCann for Defendant and Respondent Thomas V. Girardi and for Plaintiff and Respondent.
Lewis Brisbois Bisgaard & Smith and Rebecca R. Weinreich for Defendant and Respondent National Union Fire Insurance Company of Pittsburgh, PA.

OPINION
ROTHSCHILD, Acting P. J.
In the first of these consolidated appeals, Joseph L. Shalant challenges the dismissal of his complaint against Thomas V. Girardi and National Union Fire Insurance Company. The superior court dismissed the complaint on the ground that Shalant, a vexatious litigant, was in violation of the prefiling order that had been entered against him pursuant to Code of Civil Procedure section 391.7.[1] In the published portion of our opinion, we conclude that because Shalant was initially represented by counsel, who filed the complaint on Shalant's behalf, Shalant did not violate the prefiling order by later appearing in the case in propria persona. Accordingly, we reverse the dismissal.
In the second appeal, Shalant challenges the judgment entered against him on Jose Castro's complaint in a related action. In the unpublished portion of our opinion, we conclude that the judgment against Shalant is not supported by substantial evidence and must be reversed as well.

BACKGROUND
In a prior action in 2002, the superior court entered an order declaring Shalant to be a vexatious litigant within the meaning of section 391. On that *549 basis the court entered a "prefiling order" pursuant to section 391.7. The prefiling order provides that Shalant "is prohibited from filing any new litigation in propria persona in the courts of California without approval of the presiding judge of the court in which the action is to be filed." In 2004, on appeal from the final judgment in that action, the Court of Appeal affirmed the trial court's determination that Shalant is a vexatious litigant. (Shalant v. Deutsch (Feb. 4, 2004, B157103) [nonpub. opn.].)
On December 22, 2006, Shalant, represented by counsel, filed the instant action against Girardi, Continental Casualty Company, and National Union. The complaint alleges that Shalant and Girardi jointly represented Castro and his wife as the plaintiffs in a personal injury matter, in which Continental and National Union were the defendants' insurers. According to Shalant's complaint, when the Castros' matter settled Continental and National Union issued the settlement payment to the Castros and Girardi alone, without including Shalant as a payee or giving him notice, despite Continental and National Union's awareness of his attorney's fees lien on the settlement proceeds. Thereafter, the complaint alleges, Girardi paid Shalant $745,000 of the proceeds as attorney's fees but refused to pay an additional $27,745.34 to which Shalant was entitled "as the balance of his fee interest and as reimbursement of costs." Shalant alleged claims for breach of contract, breach of the covenant of good faith and fair dealing, an accounting, and intentional and negligent interference with prospective economic advantage.[2] Shalant sought to recover actual damages in the amount of $27,745.34 and punitive damages in the amount of $5 million.
On January 22, 2007, Girardi filed a cross-complaint against Shalant. Girardi alleged that Shalant was disbarred on May 18, 2005, before entering into the contract that formed the basis for Shalant's complaint, and that Shalant had misrepresented his bar status to Girardi and the Castros to induce them to enter into the contract. Girardi sought to recover actual damages in the amount of $745,000 and punitive damages in the amount of $7 million. Shalant's state bar records (introduced by Girardi) indicate that the actual chronology differs from the allegations of the cross-complaint. Shalant was involuntarily "enrolled inactive" by the state bar on May 18, 2005, effective no later than May 21, 2005. On December 14, 2005, the Supreme Court filed an order disbarring Shalant, effective January 13, 2006. (See Cal. Rules of Court, rule 9.18(a).)
On February 13, 2007, Castro filed a complaint against Shalant. Castro's operative second amended complaint alleges claims for fraud, concealment, *550 negligent misrepresentation, and breach of fiduciary duty. The pleading alleges that Shalant either misrepresented or failed to disclose various facts about his impending discipline by the bar (e.g., Shalant allegedly told Castro that he "had a minor infraction with the California [s]tate [b]ar" that would likely lead to nothing more than a suspension of at most 90 days), and that as a result Castro entered into a joint-representation and fee-splitting agreement with Shalant and Girardi that contained "less favorable terms regarding fees and costs than [Castro] was entitled to." In his action against Shalant, Castro (represented by Girardi) sought to recover actual damages in the amount of $745,000 and punitive damages in the amount of $7 million.
On September 4, 2007, National Union filed a cross-complaint against the Castros for indemnity and related claims.
In May 2007, new counsel for Shalant substituted into the case, replacing the attorney who had filed the complaint on Shalant's behalf. Seven months later, Shalant substituted in as his own attorney on Girardi's cross-complaint. The following month Shalant substituted in as his own attorney on his complaint as well. Two months after that, Shalant's original counsel substituted back into the case, replacing Shalant. Three months later, however, Shalant's attorney filed an ex parte application to be relieved as counsel. On July 15, 2008, the trial court granted counsel's application, leaving Shalant self-represented once again.
On July 29, 2008, Girardi filed a notice of Shalant's status as a vexatious litigant subject to a prefiling order. On July 30, 2008, National Union filed a motion to dismiss Shalant's complaint for failure to comply with section 391.7.
Shalant filed an application for permission to proceed in propria persona, but the application is not part of the record on appeal. The record does, however, include the presiding judge's minute order dated August 12, 2008, denying Shalant's application on the ground that "no proof of service is attached to establish that notice was given to all parties." On the same day and in response to the court's order, Shalant submitted a handwritten letter to the presiding judge. In it, Shalant contended that the relevant statutory provisions and case law do not require him to serve his application on opposing parties. He asked the court to inform him if the court disagreed, and he said he would be "happy" to serve the other parties and would do so "immediately" if the court was of the opinion that service was required.
On August 13, 2008, Girardi filed an ex parte application to dismiss Shalant's complaint pursuant to section 391.7 or, in the alternative, for an order shortening time to hear a motion to dismiss on that ground. On August *551 14, 2008, the court calendared National Union's and Girardi's motions to dismiss for hearing on Sept. 18, 2008, and the court ordered Shalant "to request permission from the presiding [j]udge to proceed in this matter." Also on August 14, the presiding judge entered a minute order noting receipt of Shalant's handwritten letter of August 12, which the court considered to be an "improper ex-parte communication" because it was not served on defendants. The court returned the letter to Shalant without further comment.
At some subsequent date, Shalant filed and served a new application for permission to proceed in propria persona. The copy of the application in the record on appeal bears no file stamp, but Shalant states in his opening brief that the application was filed on August 18. The proof of service is dated August 18. The trial court calendared Shalant's application for hearing on October 1, 2008 (that is, nearly two weeks after the Sept. 18 hearing on the motions to dismiss).
On September 18, 2008, the trial court heard and granted the motions to dismiss on the ground that Shalant had failed to comply with section 391.7. Shalant did not appear at the hearing.[3] On October 20, 2008, the court entered judgment in favor of National Union on Shalant's complaint. Shalant timely appealed.
The case proceeded to a jury trial on Girardi's and Castro's claims against Shalant. The evidence introduced at trial revealed the following sequence of events: The Castros first retained Shalant to represent them in their personal injury matter no later than the spring or summer of 2003. Castro testified that Girardi substituted for Shalant "sometime around June 2005" and that he understood that thereafter Shalant "would no longer be representing him" and that Girardi would be his "only lawyer."[4] The Castros settled the personal injury matter in January 2006 ("[o]n or about January 20, 2006," according to the Castros' respondents' brief).
The jury found by special verdict that Shalant did not make a false representation of an important fact to Castro or Girardi and that Shalant did not intentionally fail to disclose to Castro or Girardi an important fact that they did not know and could not reasonably have discovered. The jury also found, however, that Shalant breached the duty of an attorney and that the *552 breach was a substantial factor in causing Castro harm. The jury determined that Castro had suffered no economic damages but had suffered noneconomic damages in the amount of $55,000. The jury also awarded Castro punitive damages of $100,000, having found that Shalant acted with malice, oppression, or fraud. The jury awarded no damages, compensatory or punitive, to Girardi.
On February 4, 2009, the trial court entered judgment on the jury verdict. Shalant timely appealed, and we consolidated the case with the earlier appeal from the judgment that was entered after the granting of the motions to dismiss.[5] Neither Castro nor Girardi filed a cross-appeal.

DISCUSSION

I. Section 391.7 Governs Only the Initiation of a Lawsuit
Shalant argues that because section 391.7 concerns only the filing of a new action and Shalant was represented by counsel when he filed his complaint, the trial court erred when it granted the motions to dismiss. We review this issue of statutory interpretation de novo (Bravo v. Ismaj (2002) 99 Cal.App.4th 211, 219 [120 Cal.Rptr.2d 879]), and we agree with Shalant.
National Union's and Girardi's motions sought dismissal of Shalant's action on the basis of Shalant's alleged violation of the prefiling order issued pursuant to section 391.7. Our analysis therefore must address the terms of both the statute and the order.
Subdivision (a) of section 391.7 provides in relevant part: "[T]he court may, on its own motion or the motion of any party, enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed." For purposes of the vexatious litigant statutes, including section 391.7, "litigation" is "any civil action or proceeding, commenced, maintained or pending in any state or federal court." (§ 391, subd. (a).)
The prefiling order entered against Shalant (on a form approved by the Judicial Council) prohibits Shalant "from filing any new litigation in propria persona in the courts of California without approval of the presiding judge of the court in which the action is to be filed." The order closely tracks the language of section 391.7 and at one point substitutes the term "action" for *553 the statutory term "litigation" ("court in which the action is to be filed" instead of "court where the litigation is proposed to be filed"), in keeping with the statutory definition ("litigation" is "any civil action or proceeding").
Shalant filed only one civil action or proceeding in this case, namely, his action against Girardi and National Union. He did not file it in propria persona but rather filed it through counsel. Nothing in the prefiling order prohibits Shalant from continuing to prosecute or maintain an action in propria persona as long as he did not file the action in propria persona (and nothing in the statutory language would authorize the issuance of a prefiling order containing such a prohibition). Shalant therefore did not violate the prefiling order, and the trial court erred by granting the motions to dismiss.
Our analysis cannot end there, however, because Forrest v. Department of Corporations (2007) 150 Cal.App.4th 183 [58 Cal.Rptr.3d 466] (hereafter Forrest), held that "the requirements of a prefiling order, under section 391.7, remain in effect throughout the life of a lawsuit and permit dismissal at any point when a vexatious litigant proceeds without counsel or without the permission of the presiding judge." (Id. at p. 197.) In Forrest, the plaintiff was declared a vexatious litigant and became subject to a prefiling order in 1994. (Id. at p. 188.) In 2003, the plaintiff filed a complaint in propria persona but did not serve it on the defendants. (Id. at p. 189.) The plaintiff then retained counsel, who filed and served a first amended complaint. (Ibid.) Later, the plaintiff's counsel withdrew, and the defendants moved to dismiss on the basis of section 391.7, subdivision (c), which provides that once a defendant files and serves notice that the litigation was filed in violation of a prefiling order, the litigation "shall be automatically dismissed unless the plaintiff within 10 days of the filing of that notice obtains an order from the presiding judge permitting the filing of the litigation ...." (See Forrest, supra, 150 Cal.App.4th at pp. 190-192.) When the plaintiff failed, after a number of continuances, to retain new counsel or obtain permission from the presiding judge to proceed in propria persona, the trial court dismissed the complaint. (Id. at p. 193.)
The Court of Appeal affirmed. (Forrest, supra, 150 Cal.App.4th at p. 188.) The court began its analysis by observing that section 391.7 "has been broadly interpreted." (150 Cal.App.4th at p. 195.) The court also noted that "the definition of `litigation' encompasses lawsuits beyond the initial filing to include those that are maintained or pending." (Id. at pp. 196-197.) The court went on to reason that the phrase "any new litigation" in subdivision (a) of section 391.7which authorizes the issuance of a prefiling order that prohibits filing "any new litigation" in propria persona without permission of the presiding judge"plainly refers to a civil lawsuit filed after entry of the prefiling order," not "to an early procedural stage in the lawsuit." (150 *554 Cal.App.4th at p. 196.) That is, the word "new" in subdivision (a) of section 391.7 does not limit a prefiling order to the initiation of a lawsuit but rather indicates that such an order applies only to lawsuits initiated after the order is issued. The court also observed that "a litigant may be designated `vexatious' for actions throughout the life of a lawsuit, not merely at its commencement," and the court concluded that "[i]t would be anomalous for the statute to permit the entry of a prefiling order based on a litigant's bad faith acts throughout a lawsuit but then limit application of the order to the filing of a new lawsuit and have no application during its pendency." (150 Cal.App.4th at p. 197.) For all of those reasons, the court concluded that "the terms of the prefiling orderrepresentation by counsel or permission to filepertain throughout the life of the lawsuit," so dismissal is permitted any time the vexatious litigant proceeds without counsel and without the permission of the presiding judge. (Id. at p. 197.)
The panel was not, however, unanimous. The dissent began by stating that "[t]he majority has rewritten Code of Civil Procedure section 391.7 to say what it believes the statute should say." (Forrest, supra, 150 Cal.App.4th at p. 205 (dis. opn. of Ashmann-Gerst, J.), fn. omitted.) In particular, the dissent observed that "nothing in section 391.7 expressly prohibits a vexatious litigant from proceeding in propria persona after his or her complaint has been filed by an attorney then representing the plaintiff." (Id. at p. 206 (dis. opn. of Ashmann-Gerst, J.).) For that reason and others, the dissent found that "the statute is, at best, ambiguous." (Id. at p. 207 (dis. opn. of Ashmann-Gerst, J.).) The dissent ultimately concluded, on the basis of public policy considerations, that "[the plaintiff's] action should not have been dismissed pursuant to section 391.7" and that, in general, "a prefiling order governs only the initiation of a lawsuit, not what occurs during the prosecution of the litigation." (Id. at pp. 207-208 (dis. opn. of Ashmann-Gerst, J.).)
(1) We agree with the Forrest dissent's conclusion that a prefiling order issued pursuant to section 391.7 governs only the initiation of a lawsuit, not what occurs during the prosecution of the litigation. We do not, however, find any pertinent ambiguity in the language of either the statute or the prefiling order entered against Shalant, and we therefore see no need to resort to extrinsic interpretive aids such as public policy considerations.
(2) As we noted at the outset, the statutory definition of "litigation" for purposes of section 391.7 is "any civil action or proceeding, commenced, maintained or pending in any state or federal court." (§ 391, subd. (a).) Thus, litigation is a civil action or proceeding (such as a writ proceeding). Section 391.7, subdivision (a), authorizes the issuance of a prefiling order that "prohibits a vexatious litigant from filing any new litigation" in propria persona without permission of the presiding judge. Thus, if we insert the *555 statutory definition of "litigation," we find that subdivision (a) of section 391.7 authorizes issuance of a prefiling order that prohibits a vexatious litigant from filing any new civil action or proceeding in propria persona without permission. That is precisely what the prefiling order in this case does: The order prohibits Shalant "from filing any new litigation [i.e., civil action or proceeding] in propria persona" without permission of the presiding judge. Once that condition is satisfiedthat is, once the suit has been filed either with permission of the presiding judge or by counsel representing plaintiffnothing in the language of the order prohibits Shalant from prosecuting the action in propria persona, and nothing in the language of the statute would authorize the issuance of an order that did prohibit it.
We do not find the Forrest majority's arguments to the contrary persuasive. First, the majority's interpretation of the term "new" does not affect our analysis. Assuming that the Forrest majority is correct that the phrase "any new litigation" in subdivision (a) of section 391.7 refers to any litigation commenced after the prefiling order is issued, the statute still authorizes only the issuance of prefiling orders that prohibit the filing of civil actions or proceedings in propria persona and without permission of the presiding judge. The statute says nothing about prohibiting a vexatious litigant from prosecuting a new action in propria persona if the action was properly filed.
(3) Second, we are not persuaded by the claim that "[i]t would be anomalous for the statute to permit the entry of a prefiling order based on a litigant's bad faith acts throughout a lawsuit but then limit application of the order to the filing of a new lawsuit and have no application during its pendency." (Forrest, supra, 150 Cal.App.4th at p. 197.) That purported anomaly cannot change what section 391.7 says. The statute authorizes nothing more than the issuance of prefiling orders that prohibit the filing of new civil actions or proceedings in propria persona and without permission. By its terms, the statute does not authorize issuance of prefiling orders that regulate the conduct of actions properly commenced.
(4) Third, we believe that both the majority and the dissent in Forrest misperceived the import of the statutory definition of the term "litigation." Again, the definition of "litigation" for purposes of the vexatious litigant statutes, including section 391.7, is "any civil action or proceeding, commenced, maintained or pending in any state or federal court." (§ 391, subd. (a).) Both the majority and the dissent in Forrest appear to have inferred that the reference to litigation that is "pending" or being "maintained" suggests that section 391.7's authorization of prefiling orders concerning "litigation" extends to the conduct of litigation that is already in progress. (See Forrest, supra, 150 Cal.App.4th at pp. 196-197; id. at p. 206 (dis. opn. of Ashmann-Gerst, J.).) No such inference is warranted. The Legislature *556 adopted a general definition of the term "litigation" so that the term could be used throughout the vexatious litigant statutes to refer to various types of civil actions or proceedings at various stages of progress and in various courts. But as used in the context of a particular statutory provision the term can have a more specific meaning, referring only to a part of the general category of actions included within the definition.
A simple example illustrates the point: The statutory definition of "litigation" includes civil actions or proceedings "in any state or federal court." (§ 391, subd. (a).) But subdivision (a) of section 391.7 authorizes only prefiling orders that bar the filing of litigation "in the courts of this state." The general statutory definition of "litigation," which covers actions in federal court as well as the courts of other states, does not mean that, contrary to its own terms, subdivision (a) of section 391.7 authorizes California courts to bar vexatious litigants from filing actions in federal court or the courts of other states. Rather, the language of section 391.7, subdivision (a), makes clear that the term "litigation" as used in that provision refers only to a subset of the larger category of actions that are included within the statutory definitionit there refers only to actions in California courts.
Similarly, the general statutory definition of "litigation," which covers actions that are already pending, does not mean that, contrary to its own terms, subdivision (a) of section 391.7 authorizes California courts to issue prefiling orders that regulate the conduct of actions that are already pending. Rather, the language of section 391.7, subdivision (a), makes clear that the term "litigation" as used in that provision refers only to a subset of the larger category of actions that are included within the statutory definitionit there refers only to actions that the plaintiff proposes to file but has not yet filed.
(5) Fourth and finally, we disagree with the Forrest majority's reliance on the statement that "[s]ection 391.7 has been broadly interpreted." (Forrest, supra, 150 Cal.App.4th at p. 195.) Taken as a purely descriptive claim, the statement is probably truesection 391.7 does appear to have been interpreted broadly. (See Forrest, supra, 150 Cal.App.4th at pp. 195-196 & fn. 4 [collecting cases].) But taken as a normative claimthat section 391.7 should be interpreted broadlythe statement is incorrect, because the Court of Appeal has repeatedly upheld the vexatious litigant statutes (including § 391.7) against constitutional challenges on the ground that the statutes are narrowly drawn and thus do not impermissibly invade the right of access to the courts. (See Wolfgram v. Wells Fargo Bank (1997) 53 Cal.App.4th 43, 55-57, 60 [61 Cal.Rptr.2d 694]; Luckett v. Panos (2008) 161 Cal.App.4th 77, 81 [73 Cal.Rptr.3d 745]; In re R.H. (2009) 170 Cal.App.4th 678, 702 [88 Cal.Rptr.3d 650]; Kobayashi v. Superior Court (2009) 175 Cal.App.4th 536, 541 [96 Cal.Rptr.3d 99].) Given the important constitutional concerns that *557 section 391.7 implicates, we conclude that the statute should not be broadly interpreted. Rather, it should be applied strictly according to its terms.
We sympathize with the plight of already overburdened trial courts that are forced to contend with the abusive conduct of vexatious litigants. But in their efforts to deal with the problem of vexatious litigants, courts must observe the limits set by the applicable statutory scheme. If those limits are too confining, then it is the function of the Legislature, not the courts, to expand them.
(6) In addition, our holding today does not leave defendants or trial courts without remedies for dealing with vexatious litigants, frivolous lawsuits, or abusive litigation conduct. For example, vexatious litigants may be required to post security (§ 391.1), attorneys and self-represented parties may, under certain conditions, be sanctioned for pursuing frivolous litigation (§ 128.7), and sanctions may be imposed for discovery abuses as well (§§ 2023.010-2023.040).
(7) For all of the foregoing reasons, we conclude that section 391.7 authorizes the issuance of prefiling orders that "govern[] only the initiation of a lawsuit, not what occurs during the prosecution of the litigation." (Forrest, supra, 150 Cal.App.4th at p. 208 (dis. opn. of Ashmann-Gerst, J.).) The prefiling order entered against Shalant does not exceed that statutory authorization. It prohibits him from filing a new civil action or proceeding in propria persona without permission of the presiding judge, but it does not prohibit him from prosecuting (in propria persona and without permission) an action that was filed in compliance with those requirements. The trial court therefore erred in granting the motions to dismiss.

II. The Verdict Against Shalant Is Not Supported by Substantial Evidence[*]

DISPOSITION
The judgment in B211932 is reversed, and the superior court is directed to enter a new and different order denying Girardi's and National Union's motions to dismiss.
The judgment in B214302 is reversed with respect to Castro's breach of fiduciary duty claim against Shalant, and the superior court is directed to enter judgment in favor of Shalant on that claim. The judgment is affirmed *558 with respect to the remainder of Castro's claims against Shalant and with respect to Girardi's claims against Shalant.
Appellant shall recover his costs on both of these consolidated appeals.
Chaney, J., and Johnson, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II.
[1] All subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.
[2] Shalant omitted Continental as a defendant in his second and third amended complaints, and as far as we can determine from the record Continental is no longer a party to this action. We will accordingly omit Continental from the remainder of our discussion.
[3] Shalant claims that he inadvertently missed the hearing because he mistakenly believed that it had been continued to a later date.
[4] Castro's wife testified that it was her understanding that Shalant "was continuing to act as" her lawyer even after Girardi substituted in, because Shalant periodically phoned and "offered advice." ("He just often talked about the case and how much it was worth and moneywise and stuff like that.") Her testimony is of limited relevance, however, because only Castro himself is a plaintiff on the complaint against Shalant. His wife is not a party to that action.
[5] In view of our consolidation of the appeals, we deny as moot Shalant's motion to augment the record in the first appeal to include the jury verdict that is the subject of the second appeal.
[*] See footnote, ante, page 545.