[No. B137295. Second Dist., Div. Seven. Oct. 22, 2003.]

PBA, LLC, et al., Plaintiffs, Cross-Defendants, and Appellants, v.
KPOD, LTD. et al., Defendants, Cross-Complainants, and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Facts and Proceedings Below and parts II through VIII.

COUNSEL

Law Offices of M. Reed Hunter, M. Reed Hunter; Jeffer, Mangels, Butler & Marmaro, Paul Hamilton, Neil C. Erickson; Berger & Norton and Michael M. Berger for Plaintiffs, Cross-Defendants and Appellants.

Law Offices of Frederico C. Sayre, Frederico C. Sayre, Roy L. Comer, Kent M. Henderson and Daniel Cargnelutti for Defendant, Cross-Complainant and Appellant Timothy O'Brien.

Sailor J. Kennedy, in pro. per., for Defendant, Cross-Complainant and Appellant.

OPINION

**JOHNSON, J.**—This appeal is the latest episode in a long story of litigation commencing in 1997. At different stages it was heard by five judicial officers, culminating in a record of nearly 20,000 pages. The action involves the purchase, operation and eventual sale of a hotel, the Carson Hilton, by three joint venturers, PBA, LLC (hereafter PBA), KRAD Associates, LLC (hereafter KRAD), and KPOD Ltd. (hereafter KPOD).

After a brief relationship between the companies and their principals characterized primarily by disputes over management, allegations of mismanagement, and general discord, the hotel was partitioned by sale, its liabilities paid, and the remaining proceeds apportioned. Various cross-complaints between the companies and their principals were disposed of by dismissal or trial.

PBA's appeal focuses primarily on rulings made by Judge Gale, contending he "acted as a de facto court of appeal, overturning sound and well-grounded decisions . . . made by prior judges and, sometimes by courts of appeal. . . ." PBA argues Judge Gale abused his discretion and exceeded his jurisdiction by

making rulings contrary to his predecessors, principally Judge Morgan, in violation of Code of Civil Procedure section 1008. Among other things, PBA challenges Judge Gale's order vacating an order by Judge Morgan declaring defendant and cross-complainant Sailor Kennedy a vexatious litigant and requiring Kennedy to obtain court permission before filing any new litigation in this state.

KPOD, which agrees for the most part with Judge Gale's rulings, primarily appeals from Judge Morgan's grant of summary judgment to PBA on the complaint for partition of the property and certain findings by the referee on the accompanying accounting. KPOD joins Sailor Kennedy in contending Kennedy successfully moved to disqualify Judge Morgan at an early point during the litigation, thereby voiding some of the principal rulings in this case.

Sailor Kennedy, a principal in KPOD, appeals the trial court's decision striking the first 12 causes of action of his cross-complaint against PBA and others and the court's ruling denying his motion to strike the orders of Judge Morgan on the ground Morgan had been disqualified.

Timothy O'Brien, a real estate agent, appeals from the trial court's decision striking the first eight causes of actions in his cross-complaint against the Patels, principals in PBA.

In the published portions of this opinion we hold: (1) Judge Morgan had jurisdiction to strike Kennedy's declaration of prejudice notwithstanding the fact the judge had previously filed a response to the declaration and (2) Judge Gale erred in vacating Judge Morgan's vexatious litigant and prefiling orders because Kennedy failed to show a change in facts establishing the orders were no longer justified. The facts relevant to these subjects are discussed in our resolution of the issues below.

## FACTS AND PROCEEDINGS BELOW*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 965.

## DISCUSSION

I. *KENNEDY'S MOTION TO SET ASIDE ALL ORDERS ENTERED BY JUDGE MORGAN WAS PROPERLY DENIED BECAUSE (A) REVIEW OF A DISQUALIFICATION MOTION IS LIMITED TO A PETITION FOR A WRIT OF MANDATE AND (B) ALL OF THE DECLARATIONS OF BIAS AND PREJUDICE WERE EITHER PROPERLY ORDERED STRICKEN OR FOUND MERITLESS.*

Pursuant to Code of Civil Procedure section 170.3,[4] Kennedy and O'Brien filed a declaration alleging bias and prejudice against Judge Morgan on January 8, 1998. On the same day, Judge Morgan filed and served a verified answer to the allegations. Still later on the same day, Judge Morgan determined the declaration was untimely and failed to meet the requirements of the statute. Therefore, under the authority of section 170.4 subdivision (b), Judge Morgan ordered the declaration stricken from the record.

Four days later, Kennedy filed another declaration of bias and prejudice, which Judge Morgan immediately ordered stricken.

Kennedy and O'Brien filed two additional declarations of bias against Judge Morgan on May 17, 1999, and June 8, 1999. These declarations were denied by Judges Fujisaki and Gale respectively. Undeterred, on June 21, 1999, Kennedy filed his fifth declaration of bias and prejudice against Judge Morgan.

Judge Morgan recused himself on June 21, 1999, pursuant to section 170.1 subdivision (a)(6), "in furtherance of the interests of justice." Soon after, the case was transferred to Judge Gale. Kennedy then brought a motion to set aside all orders made by Judge Morgan from the time he was assigned to the case, contending Judge Morgan had been effectively disqualified as of January 8, 1998. Judge Gale denied the motion.

A. *Section 170.3 subdivision (d) Limits Review of a Judge's Disqualification to a Writ of Mandate Sought Within 10 Days of Notice of the Determination.*

Section 170.3 subdivision (d) specifies "the determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate . . . sought within 10 days of notice to the parties of the decision . . . ." As this court has held, all litigants "who seek to

---

[4] All future statutory references are to the Code of Civil Procedure unless otherwise specified.

challenge denial of a statutory judicial disqualification motion are relegated to writ review as described in section 170.3(d)."[5] Likewise, section 170.3 subdivision (d) "forecloses appeal of a claim that a *statutory* motion for disqualification authorized by section 170.1 was erroneously denied, and this preclusion applies even when the statutory basis . . . appears to codify due process grounds for challenging the impartiality of a judge."[6] ■ Thus, as our Supreme Court has affirmed, "the exclusive means for review" of a determination on the disqualification of a judge is by a petition for writ of mandate in accordance with section 170.3 subdivision (d).[7]

"The purpose of this rule is twofold. It seeks to eliminate the waste of time and money which would flow from continuing the proceeding subject to its being voided by an appellate ruling that the disqualification decision was erroneous. It also promotes fundamental fairness by denying the party seeking disqualification a second 'bite at the apple' if he loses on the merits but succeeds on appeal from the disqualification order."[8]

■ Kennedy and O'Brien did not seek a writ of mandate after the striking or denial of any of the statements of bias and prejudice they brought against Judge Morgan. The proceedings then stretched out for over a year and a half, adding more volumes to an already voluminous record. Thus, given the unfairness of reconsidering the disqualification issue at this stage, the failure of Kennedy and O'Brien to seek writ review as provided by section 170.3 constituted a waiver of their statutory claims based on section 170.1.

We conclude, therefore, that Kennedy and O'Brien are precluded from seeking review of their declarations of bias and prejudice (whether stricken or determined meritless), by a motion in the trial court or by appeal following the final judgment.

Furthermore, even assuming the issue is properly before us, we find, for the reasons explained below, that Judge Morgan was not disqualified prior to recusing himself in June 1999, and therefore the trial court properly denied the motion to set aside his orders.

---

[5] *Roth v. Parker* (1997) 57 Cal.App.4th 542, 548 [67 Cal.Rptr.2d 250].
[6] *Roth v. Parker, supra,* 57 Cal.App.4th at page 548.
[7] *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1059 [103 Cal.Rptr.2d 751, 16 P.3d 166].
[8] *Gai v. City of Selma* (1998) 68 Cal.App.4th 213, 230 [79 Cal.Rptr.2d 910].

B. *Judge Morgan's Filing an Answer Pursuant to Section 170.3 Did Not Preclude Him From Striking the Statement of Bias and Prejudice Under Section 170.4.*

■ Once a statement of disqualification has been filed by a party, the judge has four options. The judge may: (1) request any other judge agreed upon by the parties to sit and act; (2) within 10 days, "file a consent to disqualification;" (3) within 10 days file "a written verified answer admitting or denying any or all of the allegations . . . ;" or (4) strike the declaration.[9] Failure to respond within the time allowed is deemed a consent to disqualification.[10]

Kennedy contends Judge Morgan's filing an answer to the January 8 declaration pursuant to section 170.3 subdivision (c)(3) precluded him from thereafter striking the declaration of bias pursuant to section 170.4, subdivision (b). Thus, he argues the various procedural options of section 170.3 and 170.4 are mutually exclusive. We disagree.

Notwithstanding the options specified in section 170.3 listed above, if the statement is untimely filed or facially discloses no legal grounds for disqualification, the judge against whom it is filed may strike it.[11] This authority to strike the statement of disqualification derives from section 170.4, subdivisions (d) and (b). Section 170.4, subdivision (d) provides a judge against whom such a statement has been filed, has no power to act "[e]xcept as *provided in this section*." (Italics added.) Section 170.4, subdivision (b) states "[n]otwithstanding paragraph (5) of subdivision (c) of [s]ection 170.3, if a statement of disqualification is untimely filed or if on its face it discloses no legal grounds for disqualification, the trial judge against who it was filed may order it stricken." Thus, the authority to strike a declaration exists "notwithstanding" *section 170.3 subdivision (c)(5) which precludes judges from ruling on their own disqualifications.*

■ We recently held a challenged judge has the power to order a statement of disqualification stricken as legally insufficient as long as such discretion is exercised within the 10 day time limit imposed by section 170.3, subdivision (c).[12] This time limit is the *only* restraint on the power retained by a judge to strike a statement of disqualification pursuant to the guidelines of section 170.4, subdivision (b).

[9] Sections 170.3, subdivision (c), 170.4 subd. (b); *Urias v. Harris Farms* (1991) 234 Cal.App.3d 415, 420 [285 Cal.Rptr. 659].

[10] Section 170.3 subdivision (c)(2)–(4); *Urias v. Harris Farms, supra,* 234 Cal.App.3d at page 420.

[11] Section 170.4, subdivision (b); *Urias v. Harris Farms, supra,* 234 Cal.App.3d at page 420.

[12] *Lewis v. Superior Court* (1998) 198 Cal.App.3d 1101, 1104 [244 Cal.Rptr. 328].

KPOD, Kennedy, and O'Brien cite *Hollingsworth v. Superior Court*[13] for the proposition the judge's options to consent to disqualification, answer, or strike the declaration, are mutually exclusive. They argue once a trial judge files an answer to the declaration, the judge loses power to take any further action. *Hollingsworth*, however, simply determined a judge cannot consent or answer *after* striking the statement of disqualification.[14] Therefore, in such circumstances a party need not wait 10 days before seeking relief via writ of mandate.[15] This makes sense because upon striking the declaration, it no longer exists to be consented to or answered. However, nothing prevents the challenged judge from striking the declaration after first answering it. We find no authority or logical reason to prevent a judge from striking such a statement subsequent to filing an answer so long as it is done within the 10 days prescribed by the statute.

Thus, we conclude Judge Morgan's filing of an answer pursuant to section 170.3 subdivision (c)(3) did not preclude him from striking the statement of bias and prejudice within 10 days of its filing. Because Kennedy and O'Brien's January 8, statement of bias was properly stricken according to the statutory procedure, Judge Morgan's subsequent orders were valid.

C. *Kennedy's January 12 Statement of Bias and Prejudice Was Ordered Stricken from the Record by Judge Morgan on the Day It Was Filed.*

KPOD and Kennedy further claim Judge Morgan did not respond at all to the January 12 declaration of bias and prejudice filed by Kennedy. Therefore, they argue, by not responding within 10 days of the filing of this declaration, Judge Morgan effectively consented to his disqualification.

If Judge Morgan had not responded, according to section 170.3 subdivision (c)(4), he would have been deemed to have consented to disqualification. This section of the code is not relevant to the circumstances at hand, however, because the contention Judge Morgan did not respond is factually incorrect. He read, considered and ordered Kennedy's January 12 declaration of bias stricken from the record on the same day it was filed. This determination is clearly set forth in a minute order dated January 12, 1998. As discussed above, under section 170.4, within 10 days after the declaration is filed, the trial court retains the power to strike it as being untimely or for facially failing to meet the statutory requirements. Therefore, because Judge Morgan *did* respond to Kennedy's January 12 challenge for cause under section 170.1

---

[13] *Hollingsworth v. Superior Court* (1987) 191 Cal.App.3d 22, 26 [236 Cal.Rptr. 193].

[14] *Hollingsworth v. Superior Court, supra,* 191 Cal.App.3d at page 26.

[15] *Hollingsworth v. Superior Court, supra,* 191 Cal.App.3d at page 26.

by striking his declaration, the judge did not consent to disqualification and thus retained jurisdiction to enter subsequent orders.

■ In sum, because Kennedy and O'Brien's declarations pursuant to section 170.1 were stricken and not challenged via writ of mandate, the validity of Judge Morgan's orders could not be challenged on the ground the judge had been disqualified. Accordingly, Judge Gale properly denied the motion brought by Kennedy and O'Brien to set aside all orders entered by Judge Morgan.

## II.–VIII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IX. *JUDGE GALE ABUSED HIS DISCRETION IN VACATING JUDGE MORGAN'S VEXATIOUS LITIGANT AND PREFILING ORDERS BECAUSE KENNEDY FAILED TO SHOW A CHANGE IN MATERIAL FACTS TO ESTABLISH THE ORIGINAL DETERMINATION WAS NO LONGER JUSTIFIED.*

The vexatious litigant statutes were designed to curb misuse of the court system by those acting in propria persona who repeatedly relitigate the same issues, especially those " 'persistent and obsessive' litigants [who] often file groundless actions against judges and other court officers who made adverse decisions against them."[80]

Soon after Kennedy's first two attempts to disqualify Judge Morgan with a declaration of bias and prejudice, PBA filed a motion for an order declaring Kennedy a vexatious litigant pursuant to section 391. Section 391, subdivision (b)(3), defines a "vexatious litigant" as a person who "[i]n any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." PBA additionally sought a prefiling order against Kennedy pursuant to section 391.7. A prefiling order under section 391.7 prohibits a vexatious litigant from "filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court."

In support of its motion, PBA alleged Kennedy had (a) accused no less than eight judges or retired judges of being biased, bigoted, or incompetent; (b) sued no less than two judges in groundless proceedings; (c) referred or

---

*See footnote, *ante*, page 965.
[80] *Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 220–221 [120 Cal.Rptr.2d 879].

threatened to refer virtually every judge who had ruled against him to the jurisdictional body overseeing the judge's performance, and (d) accused no less than 15 attorneys of unethical conduct, perjury, altering documents, and incompetence. PBA also documented a pattern of Kennedy's lack of respect for judicial officers. Kennedy failed to challenge or rebut any of these allegations.

Based on PBA's motion, supporting documents, and his own observations of Kennedy's "substantial" misconduct, Judge Morgan declared Kennedy a vexatious litigant pursuant to section 391.3 and entered a prefiling order pursuant to section 391.7. The prefiling order prevented Kennedy from "filing any new litigation, including any complaints or cross-complaints . . . in propria persona, in the courts of this state without first obtaining leave of the presiding judge of the court where the litigation is pending or proposed to be filed."

After the case was transferred to Judge Gale, Kennedy brought a motion to vacate the orders declaring him a vexatious litigant and imposing prefiling restrictions. Judge Gale granted Kennedy's motion and vacated the prefiling order and vexatious litigant finding. PBA appeals this reversal on the ground it was improper based on the record before Judge Gale.

Despite the apparent unfairness of *permanently* branding a person as a vexatious litigant, it is unclear how the vexatious litigant determination can be erased in appropriate cases. The statutory scheme of sections 391 through 391.7 does not itself provide a procedural mechanism for dissolving an order declaring a person a vexatious litigant. Indeed, in most cases, vacating the vexatious litigant determination appears to be precluded by section 1008 beyond 10 days of notice of entry of the finding.[81]

The court in *Wolfgram v. Wells Fargo Bank,* by analogizing to a licensing system, implied a prefiling order entered pursuant to section 391.7 may be a permanent form of relief.[82] The court reasoned "[t]o the extent [section 391.7] keeps vexatious litigants from clogging courts, it is closer to 'licensing or permit systems which are administered pursuant to narrowly drawn, reasonable and definite standards' which represent 'government's only practical means of managing competing uses of public facilities[.]' [Citation.] When a vexatious litigant knocks on the courthouse door with a colorable claim, he may enter."[83] While there is much to recommend this

---

[81] Section 1008 requires an application for reconsideration be made to the same judge who made the order within 10 days of notice of the order and only upon a change of facts, circumstances or law.

[82] *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 60 [61 Cal.Rptr.2d 694].

[83] *Wolfgram v. Wells Fargo Bank, supra,* 53 Cal.App.4th at page 60.

reasoning, the conclusion section 391.7 is to be a permanent, irrevocable restriction is troubling. Although section 391.7 does not *absolutely* exclude the "pro per" litigant from the courts, we believe fundamental fairness requires the "vexatious litigant" brand be erasable in appropriate circumstances.

In the present case, we need not reach the issue of whether or not the brand of "vexatious litigant" can be erased once applied. At a minimum, to cast off the vexatious litigant label the court would have to find a change in facts or circumstances relating to the original determination. Kennedy failed to establish such new facts. Thus, even if it is theoretically possible to remove the brand of vexatious litigant, Judge Gale abused his discretion in doing so here because Kennedy failed to show a change in facts indicating a mending of his ways or conduct to support a reversal of the original determination. Furthermore, although we believe a prefiling order entered pursuant to section 391.7 may be reversible under section 533 as a form of injunction, Kennedy did not make the showing necessary for such a reversal. Kennedy failed to establish under section 533 either (a) "the ends of justice would be served" by the dissolution of the prefiling order or (b) there was a "material change in the facts" upon which the order was entered.

A. *Judge Gale Abused His Discretion by Vacating Judge Morgan's Order Declaring Kennedy a Vexatious Litigant Because There Were No New Facts to Support a Reversal of the Original Determination.*

Judge Morgan stated his order declaring Kennedy a vexatious litigant was based on "reasons stated at the hearing and in the pleadings and exhibits, and also . . . substantial [mis]conduct of Sailor Kennedy observed by the Court during the course of proceedings before the Court." Moreover, Judge Morgan declared Kennedy a vexatious litigant on what he found to be an ample, "overwhelming," "dismal record." Specifically, Judge Morgan told Kennedy: "I have observed your actions throughout. And I have seen what I deem to be frivolous actions in many categories, many ways in arguing with the court, presenting documents to the court." He further considered Kennedy's tactics, such as his last minute dismissal of his cross-complaint just days before the hearing on the demurrer and after Judge Morgan had already spent considerable time in preparing for the hearing.

Assuming Judge Gale had the power to reverse Judge Morgan's order declaring Kennedy to be a vexatious litigant, he would at least have had to find a change in facts or circumstances showing the finding was no longer appropriate.

Judge Gale's order was expressly based on several factors, none of which amounted to a change in facts or circumstances sufficient to reverse the vexatious litigant order. First, Judge Gale believed the "abrupt" proceedings under Judge Rutberg at the receivership proceedings on March 20, 1998, had sent Kennedy "off the deep end." Judge Gale emphasized he would "not even give a second thought" to vacating the vexatious litigant declaration and prefiling order if it were not for the events of March 20, which he felt triggered Kennedy's frustration and vexatious actions. However, even if the events of March 20 were a mitigating circumstance that should have been considered in making the initial vexatious litigant finding against Kennedy, they do not amount to a change in the facts upon which the original determination was based. The transcripts from the receivership proceedings on March 20 were available for Judge Morgan to consider when he declared Kennedy to be a vexatious litigant. Additionally, the significance of the March 20 hearing is questionable because Judge Morgan was not the first judge to have a declaration of bias and prejudice brought against him by Kennedy.[84]

Furthermore, in addition to his observations of Kennedy's conduct, Judge Morgan's order was based in part on the pleadings and exhibits, which detailed a litany of vexatious or frivolous actions by Kennedy in previous proceedings. Therefore, Judge Gale's belief there was an event which understandably (although unjustifiably) triggered Kennedy's actions was not a sufficient basis for vacating Judge Morgan's order. This order was based in part on a long pattern of conduct prior to the receivership proceedings. Therefore, rather than simply showing circumstances to warrant sympathy towards his position, Kennedy needed to show he had ceased the behavior which defined him as a vexatious litigant under section 391, subdivision (b)(3). We find Kennedy failed to demonstrate any facts which would suggest such a change in his behavior as a propria persona litigant.

Additionally, Judge Gale considered the merits of Kennedy's case and the credibility of Kennedy as a witness. Neither of these considerations is relevant to the determination of whether a person is a vexatious litigant within the meaning of section 391, subdivision (b)(3). Kennedy's credibility as a witness and the merits of part of his defense do not alter the court's findings based on his relevant actions before the court and as demonstrated in previous proceedings. As discussed above, section 391, subdivision (b)(3) defines a vexatious litigant as one who "while acting in propria persona, repeatedly files unmeritorious *motions*, pleadings or *other papers* . . . or engages in *other tactics* that are frivolous or solely intended to cause

---

[84] Kennedy's lack of respect towards judicial officers who rule against him is displayed in a July 28, 1994, deposition in which he bragged: ". . . I don't let judges run over me anymore. Scumbucket attorneys—*they are just as low as scumbucket attorneys.*"

unnecessary delay." (Italics added). Therefore, with ample findings directly related to the definition provided by section 391, subdivision (b)(3), Kennedy's subsequent credibility as a witness and improvement in the merits of portions of his case were irrelevant.

Kennedy failed to establish he had mended his ways. On the contrary, rather than ceasing his frivolous and delaying tactics, after being declared a vexatious litigant Kennedy brought his third and fourth declarations of bias and prejudice against Judge Morgan.

In sum, Judge Gale abused his discretion by vacating Judge Morgan's vexatious litigant finding because Kennedy completely failed to establish this determination was either incorrect in the first instance or no longer required in light of new facts.

> B. *Judge Gale Abused His Discretion by Vacating and Dissolving Judge Morgan's Prefiling Order Against Kennedy Because There Was No Change in Material Facts Upon Which the Original Determination Was Based.*

Upon declaring Kennedy to be a vexatious litigant pursuant to section 391, subdivision (b)(3), Judge Morgan entered a prefiling order pursuant to 391.7. Under that section, the presiding judge can permit the filing of a propria persona's litigation only if it appears to have merit and is not filed for the purposes of harassment or delay.[85] Further, the presiding judge may condition the filing of the litigation upon the furnishing of security.[86] "The prefiling order component of the vexatious litigant statute is a necessary method of curbing those for whom litigation has become a game."[87] These prefiling restrictions are enforced through the requirement the court provide the Judicial Council with a copy of the order. The Judicial Council then annually disseminates a list of vexatious litigants to the clerks of courts of the state.[88]

Viewing the prefiling order as a form of injunction, it may have been reversible according to the guidelines of section 533. Under section 533, the prefiling order could be reversed if either (a) "the ends of justice would be served" by the dissolution of the order or (b) there has been a "material change in the facts" upon which the order was entered.

When Judge Gale reviewed the motion to vacate the prefiling order, nothing on the record suggested the order would no longer be an appropriate

---

[85] Section 391.7, subdivision (b).
[86] Section 391.7, subdivision (b).
[87] *Wolfgram v. Wells Fargo Bank, supra,* 53 Cal.App.4th at page 60.
[88] Section 391.7, subdivision (d).

safeguard against Kennedy's vexatious and frivolous actions. Furthermore, there were no new facts to indicate Kennedy had ceased the behaviors which formed the basis for Judge Morgan's vexatious litigant determination. By nature of the statutory scheme, Judge Morgan's vexatious litigant finding was the crux of his basis for entering the prefiling order.[89] Thus, because there were no new facts to support vacating the vexatious litigant determination, likewise, there was no material change in the facts upon which the prefiling order was based.

Kennedy contends a change in the merits of his defense was sufficient to support the reversal of the prefiling order. This apparent change in facts may be relevant under section 391, which requires the posting of security only upon showing the plaintiff is a vexatious litigant and "there is not a reasonable probability that he will prevail in the litigation against the moving defendant." However, the provisions of section 391.7 do not require an inquiry into the probability of the vexatious litigant's success in the particular case in order to enter a prefiling order. Thus, an improvement in the merits of Kennedy's defense was not relevant to Judge Morgan's vexatious litigant declaration under section 391, subdivision (b)(3), or the prefiling order entered pursuant to section 391.7.

Kennedy further argues it would serve the ends of justice to reverse the prefiling order in light of the change in the merits of his defense. However, Judge Morgan's order declaring Kennedy a vexatious litigant was not solely based on his filing frivolous lawsuits or upon the merits of the present case. The declaration was based in large part on Kennedy's vexatious behavior before the court and in his past repeated, meritless attempts to disqualify judges. Therefore, in light of the statute's aim to prevent abuse of the court system by propria persona litigants, a change in the merits of Kennedy's defense does not alter Judge Morgan's determination based upon his own observations of substantial misconduct.

In conclusion, we find Judge Gale erred in reversing the order declaring Kennedy to be a vexatious litigant and imposing prefiling restrictions, because there were no new material facts to support a reversal. Further, it did not serve the ends of justice to vacate the prefiling order. To the contrary, there was ample evidence to indicate Judge Morgan's order was justified and continued to be an appropriate preventive measure against future frivolous filings by Kennedy.

We will remand this matter to the trial court with directions to vacate Judge Gale's order reversing the previous orders declaring Kennedy to be a

---

[89] See sections 391–391.7.

vexatious litigant and imposing prefiling restrictions against Kennedy. Should Kennedy choose to refile a complaint containing the causes of action he previously voluntarily dismissed, the vexatious litigant and prefiling orders will apply to that complaint.

## DISPOSITION

The order denying the motion by Kennedy and O'Brien to set aside all orders by Judge Morgan is affirmed.

The judgment in favor of KPOD on its cross-complaint against PBA is reversed.

The judgment in favor of KPOD and the other cross-defendants on PBA's cross-complaint is affirmed.

The order approving and adopting the referee's final accounting is affirmed.

The order awarding attorney fees to PBA on the partition action is affirmed.

The order requiring the receivership estate to pay the receiver's attorney fees in defending the action brought by Seaspan, Inc. is affirmed.

The order releasing from escrow PBA's share of the accounting fees billed to the hotel by White Nelson & Company is affirmed.

The orders sustaining demurrers to and dismissing the first through twelfth causes of action in Sailor Kennedy's cross-complaint are reversed. The order striking the thirteenth cause of action with leave to amend is affirmed.

The orders sustaining demurrers to and dismissing the first through eighth causes of action in Timothy O'Brien's cross-complaint are reversed. The order sustaining the demurrer to the ninth cause of action is affirmed.

The trial court is directed to vacate Judge Gale's order reversing the previous orders declaring Sailor Kennedy a vexatious litigant and imposing prefiling restrictions.

Each party to bear its own costs on appeal.

Perluss, P. J., and Muñoz, J., concurred.

Petitions for a rehearing were denied November 21, 2003, and the petition of appellants KPOD, Ltd. et al., for review by the Supreme Court was denied January 22, 2004.