Filed 1/26/16  Witte v. Young CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THOMAS WITTE, | C076568 |
| Plaintiff and Appellant, | (Super. Ct. No. 02PR00818) |
| v. | |
| CAROLYN M. YOUNG, as Administrator, etc. | |
| Defendant and Respondent. | |

Plaintiff Thomas Witte, appeals from the trial court's ruling denying his request to vacate a prefiling order upon the trial court's declaration that he is a vexatious litigant. Witte had been an attorney, but was under a State Bar suspension from the practice of law and appearing in propria persona during the proceedings which led to the prefiling order.[1]

---

[1]  In an opinion filed May 9, 2012, in case No. 08-O-11755, the State Bar Court recommended that Witte be disbarred.  The Supreme Court issued an order of disbarment on September 19, 2012, and denied Witte's petition for rehearing on October 10, 2012. Witte's disbarment became effective on October 19, 2012.  We take judicial notice of the records of the State Bar of California posted on its official website concerning Witte. (Evid. Code, § 452, subds. (d), (h).)

This case arises out of Witte's former representation of Steven Leus (Leus), who was the executor of the estate of Margaret J. Curtis. In 2006, the beneficiaries of the estate, including Leus, entered into a settlement agreement which was made an order of the court in January 2007. Later in 2007, defendant Carolyn M. Young, who had been appointed successor administrator to Leus, filed a final accounting. In 2008, trial commenced solely for determination as to the amounts various attorneys, including Witte, would be paid from estate funds for statutory and extraordinary fees for their work in connection with the estate. For reasons which we discuss *post*, by order dated July 3, 2008, the trial court granted Young's motion to declare Witte a vexatious litigant, to require Witte to post a security to assure payment of expenses to be incurred in connection with an ex parte application Witte filed, and to impose a prefiling order on Witte.[2] After denying Witte's ex parte application, the court vacated the part of the July 3, 2008, order that required Witte to post a security.

On January 7, 2014, Witte unsuccessfully moved to have the vexatious litigant declaration and the prefiling order vacated. On appeal, he asserts that by vacating the security requirement, the trial court, in effect, vacated the prefiling order because a security order is a predicate to a prefiling order. We reject that assertion and additionally conclude that Witte failed to satisfy his burden under section 391.8, subdivision (c), of showing that there has been a material change in the facts upon which the July 3, 2008, order was granted and that the ends of justice would be served by vacating that order. Accordingly, we conclude that the trial court did not abuse its discretion in denying Witte's motion.

---

[2] Further undesignated statutory references are to the Code of Civil Procedure at the time of the hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Margaret J. Curtis died on May 15, 2002. In her will, Curtis appointed her nephews Steven Leus and Henry Leus co-executors of her estate. Leus successfully petitioned the probate court to have Henry removed as co-executor. Initially, attorney Daniel Sullivan represented Leus in his capacity as executor of the estate. In 2004, Witte was substituted as counsel for Leus after Sullivan moved to withdraw.

Shortly after he began representing Leus, Witte moved to vacate an order which awarded JoEllen James, who had performed work for the estate, $48,951.33. The trial court denied that application. In February 2005, the trial court granted a petition to remove Leus as executor. Young was appointed successor administrator of the estate. Witte, on behalf of Leus, filed a notice of appeal purporting to appeal from several orders including the order appointing Young, an order, inter alia, directing James to be paid from estate funds and ordering Leus to pay a sanction, and the order denying the petition to vacate the award to James. In an unpublished opinion dated July 31, 2006, this court affirmed the order filed on February 16, 2005, removing Leus as executor, appointing Young, directing Young to pay James from estate funds, and directing Leus to pay James a sanction. To the extent Witte, on behalf of Leus, purported to appeal from two other orders, this court dismissed the appeal. (*In re Estate of Curtis* (July 31, 2006, C049124) [nonpub. opn.].)

Probate Code section 10952 required Leus to file an account within 60 days after termination of his authority as executor. When Leus and Witte did not satisfy this obligation, the trial court ordered a forensic accounting.

Witte was substituted out as Leus's attorney in October 2006. On October 25, 2006, Leus, among others, entered into a settlement agreement and mutual release in the estate action. This agreement became an order of the court dated January 18, 2007. Witte was not a party to the settlement agreement.

3

Effective November 5, 2006, the State Bar of California suspended Witte from the practice of law for a period of two years.

Young filed a final accounting of the estate on or about July 30, 2007. Objections were to be filed by August 30, 2007. Witte did not file any objection to the final accounting.

A trial was held in 2008 solely to address the allocation of attorney fees to be paid from estate funds to Witte, Sullivan, and Judy Carver, who represented Young. As trial commenced on February 28, 2008, the trial court, addressing in limine motions as to the proper scope of trial, noted that the scope of matters Witte sought to litigate "seem[ed] much greater than what's allowable by law." The court tentatively ruled that Witte was entitled to seek statutory attorney fees and extraordinary fees for the time period during which he represented Leus. Witte indicated that he wished to address matters including liability for losses of estate funds, losses caused by breach of fiduciary duty, and surcharges recoverable as the result of liability by personal representatives of the estate. Asked about his standing to assert such matters, Witte claimed that, as an attorney, he was an interested party. The court and the other parties discussed the fact that the time to address matters pertaining to the estate and the final accounting, other than attorney fees, had passed. Witte acknowledged that he did not file an objection to the final accounting. Young's attorney insisted that, under Probate Code section 48, Witte was not an interested party in the estate. The court stated that it did not believe any matters were properly before it other than statutory and extraordinary attorney fees. However, Witte insisted that the same evidence that would be relevant to his services would be relevant to his challenges to the final accounting. The court tentatively ruled that the trial would be limited to claims concerning statutory and extraordinary fees.

On March 7, 2008, the court confirmed that it was adopting as final its tentative ruling on the scope of trial. Yet, as the trial proceeded, Witte continued to press his claim that the settlement agreement was procured by fraud. As Witte continued to assert that he

4

should be able to contest the settlement, the accounting, and distribution, the court stated that Witte lacked standing as to those matters. Young's attorney noted that Leus, Witte's sole connection to the estate, had entered into the settlement agreement. The court stated that Witte lacked standing to claim that the agreement was fraudulent since he was not a signatory to the agreement. In response, Witte claimed to be an interested party, and the court responded that it had already ruled on that contention. When Witte challenged the court on the matter, the court asked how much probate experience Witte had. He responded, "I don't have that much, Your Honor. I just read the code." The court ruled that the settlement agreement had been reduced to a final order of the court, and that the time to contest it had passed. Witte also sought to address the matter of who owned certain estate documents. The court stated that this matter, too, was not properly before it.

On March 14, 2008, after the attorneys had presented evidence as to their statutory and extraordinary fees, the court stated that it had received unsolicited trial briefs from Witte. The court stated that it had been attempting to give Witte the benefit of the doubt, but that he had ignored the court's orders limiting the scope of trial. The court then indicated that it had learned Witte had been suspended from the practice of law. The court stated, "there is no doubt in my mind that these briefs that he filed . . . that he is not merely addressing facts in support of compensation that he desires, either statutory compensation or extraordinary compensation; he is stating a position for a former client, Steven Leus, as an advocate. And that I believe is in violation of his suspension from the State Bar." The court expressly ordered Witte to make no arguments other than as to statutory and extraordinary compensation. The court also stated that it was considering forwarding a transcript of the proceedings to the State Bar of California for determination as to whether Witte violated his suspension by practicing law. The court further stated that Witte was not an interested party to the probate matter, and his only involvement was to address the attorney fees for his representation of Leus.

5

On March 28, 2008, Witte filed an ex parte application for production of certain financial documents related to the estate (hereafter, ex parte application). Witte claimed that certain documents he prepared in reviewing the estate, now in Young's possession, constituted his work product. Witte claimed these documents were relevant to the issue of the forensic accounting and the delay he claimed was caused by Young and Carver in procuring the forensic accounting, as well as the "false surcharge claims" asserted against Leus. Witte sought, among other things, a determination as to who owned the estate financial documents, and who was the proper party to maintain custody of them. Witte contended these documents were the property of the estate and Leus, and he asserted that they should be returned to him so that he could convey them to Leus. Witte continued, "[t]he documents need to be preserved as evidence in this case or for other litigation that may result from this case."

On April 2, 2008, Young moved to have Witte declared a vexatious litigant. Young claimed that Witte, while acting in propria persona, had repeatedly filed unmeritorious motions, pleadings, or other papers, and/or engaged in other tactics that were frivolous or solely intended to cause unnecessary delay or to harass other parties and/or counsel. Young sought an order, inter alia, declaring Witte a vexatious litigant, requiring Witte to post security to assure payment of the expenses of litigating Witte's ex parte application and future litigation, and preventing Witte from filing any new litigation in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed.

In an order filed July 3, 2008, the trial court, after a hearing, granted Young's motion to declare Witte a vexatious litigant. The court concluded, "Based on Mr. Witte's demonstrated pattern and practice of filing numerous unmeritorious pleadings and other papers, and engaging in other tactics that are frivolous or solely intended to cause unnecessary delay, and his practice of attempting to relitigate matters that have previously been finally resolved by prior court rulings, and further based on the

6

likelihood that such behavior is not likely to cease without intervention by the court, the Court finds that Mr. Witte is prohibited from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed." The court directed Witte to furnish security in the amount of $2,000 for the benefit of Young and the estate within 10 days.

In an order dated July 8, 2008, the court denied Witte's ex parte application on the grounds that the application failed to comply with California Rules of Court and that Witte failed to show good cause, emergency, or irreparable harm, and because his arguments, which were on behalf of Leus, constituted the practice of law in violation of Witte's suspension order.

By order dated July 25, 2008, the court, in effect, vacated the part of the July 8, 2008, order that required Witte to post a security. As Witte observed, since the court denied his ex parte application to obtain certain records before the time Young was required to respond to the application, the rationale for the requirement that he post security no longer remained. Otherwise, the court stated, "[a]ll other orders remain in effect."

In an order filed on August 22, 2008, the trial court, inter alia, awarded Witte $3,119.97 as his share of statutory attorney fees for services in connection with the estate. The court noted that several factors weighed "against Witte's competence and credibility sufficient to reduce his claim for ordinary compensation." The court denied Witte's application for compensation for extraordinary services.

Witte filed a notice of appeal with this court from the order dated July 3, 2008, declaring him a vexatious litigant. However, on December 10, 2008, this court dismissed the appeal because he did not obtain a prefiling order from the presiding justice of this court authorizing his appeal. Witte then filed a motion seeking relief from his failure to

7

obtain a prefiling order. On December 24, 2008, this court denied Witte's motion. The remittitur issued on February 11, 2009.[3]

Witte filed an application in the trial court on January 7, 2014, to vacate the order dated July 3, 2008, declaring him to be a vexatious litigant and imposing the prefiling requirement.[4] Witte claimed his application was made on the grounds of a material change in the facts upon which the order was granted. However, Witte's arguments also attacked the validity of the underlying order.[5] In support of his application, Witte appended his own 24-page declaration addressed to all of the circumstances as they existed prior to and at the time the court entered the order declaring him to be a vexatious litigant and imposing the prefiling requirement.

Young opposed Witte's motion. She observed that the July 3, 2008, order became final long ago, and was no longer subject to appeal. Young observed that, notwithstanding Witte's arguments, under the applicable law, the only issue properly addressed on Witte's application was whether he demonstrated a material change in the facts upon which the July 3, 2008, order was granted and that the ends of justice would be served by vacating that order. Young asserted that Witte had furnished no evidence of any change in his behavior to warrant vacatur of the July 3, 2008, order. On the contrary,

---

[3] We note that Witte was represented by counsel when this current appeal was filed. His opening brief was filed by Stephanie Virrey Gutcher. A substitution of counsel was filed on March 17, 2015, substituting Witte in propria persona for Gutcher. He filed his reply brief in propria persona.

[4] Witte filed applications seeking the same relief in 2009 and 2013, both of which were denied.

[5] For example, Witte contended that the court's order was erroneous because it was based on a motion by Young and not issued on the court's own motion and the trial court's factual findings underlying the July 3 order were not supported by the evidence.

8

Young emphasized that, instead of addressing the appropriate standard, Witte, yet again, sought to relitigate the underlying issues.

In his reply papers, Witte continued to attack the validity of the underlying July 3, 2008, order.

In proceedings before the trial court on March 28, 2014, Witte asserted that there was no evidence of misconduct by him in the years since the entry of the prefiling order. The court observed that Witte had shown no remorse, and expressed its impression that Witte still believed that he was correct. The court observed that it did not constitute remorse for Witte to maintain that the court wrongly declared him a vexatious litigant. Counsel asserted that Witte was, once again, attempting to relitigate the underlying order rather than making the requisite showing which would entitle him to relief. The court denied the application and stated that it would issue a written ruling.

In an order filed March 28, 2014, the trial court denied Witte's application. The court concluded that Witte failed to furnish evidence of a change in facts upon which the July 3, 2008, order was granted. The court noted that none of the information provided by Witte was new, but instead all of the facts on which Witte relied were in existence at the time the underlying order was entered. Additionally, the court found that the information upon which Witte relied did not reflect any change in his vexatious behavior, but instead amounted to yet more argument as to the validity of the underlying order. The court further stated that Witte "distort[ed] the record and the law," relied on incomplete references to the record, and omitted facts. The court stated that Witte's arguments to the effect that a prefiling order under section 391.7 could not lie in the absence of an order requiring security pursuant to section 391.1 were "completely lacking in merit." The court observed that section 391.7 provides that the court may enter a prefiling order "[i]n addition to any other relief provided in" section 391 et seq., which addresses vexatious litigants. The court stated that the foregoing language "has never been interpreted to mean that a prefiling order cannot exist without an order for security."

9

The trial court discussed the criteria set forth in *Luckett v. Panos* (2008) 161 Cal.App.4th 77 (*Luckett*), on which Young relied, in which the appellate court described factors to be considered in determining whether a litigant has demonstrated a change in circumstances warranting vacatur of a prefiling order.[6] The *Luckett* criteria include honesty in the application; remorse for the costs of litigation inflicted on the other parties; an effort at restitution for the victims of the vexatious litigation, including the payment of cost orders; and a demonstrated abandonment of "the habit of suing people as a way of life." (*Id*. at pp. 93-94.) The court concluded that Witte was not forthright about the circumstances giving rise to the underlying order, as he insisted that the order arose merely from the court's failure to understand his legal arguments. The court stated that there was no showing that Witte had changed his behavior or demonstrated remorse for the costs imposed on others by his actions. The court further stated that Witte did not mention any attempts at restitution, and he did not demonstrate that he had changed his way of life. Indeed, the court emphasized that Witte continued to reargue the validity of the settlement agreement and the accounting, issues which had been finally resolved long ago. The court stated that the "pleadings themselves are evidence that there has not been a change in facts."

Accordingly, the court denied Witte's application.

**DISCUSSION**

Witte contends that the trial court erred in denying his application to vacate the prefiling order because mere weeks after the court declared him a vexatious litigant, it vacated the requirement that he post security. Witte maintains that vacatur of the security requirement eliminated any rationale for a prefiling order and terminated the validity of

---

[6] *Luckett* predated the 2011 enactment of section 391.8. Section 391.8, subsection (c), which will be discussed *post*, now expressly sets forth the showing a vexatious litigant must make to obtain relief from a prefiling order.

10

such an order. Witte believes that, as a result, there were no longer grounds for the existence of a prefiling order or a determination that he was a vexatious litigant. According to Witte, based on the statutory language, a prefiling order cannot exist in the absence of an order requiring the vexatious litigant to post security. Witte largely addresses the validity of the underlying July 3, 2008, order rather than the standard applicable to vacating a prefiling order.[7] Finally, Witte contends that the trial court should have vacated the prefiling order in light of the fact that more than six years has passed since the entry of that order and there is no evidence that, during that time, he has filed meritless litigation.

Young responds that Witte failed to satisfy the showing required to vacate the prefiling order and the declaration that he is a vexatious litigant. Young points out that, rather than addressing the applicable standard, Witte "focused the entirety of his application to vacate the prefiling order on attempting to re-litigate the July 3, 2008 order, an order that became final six years ago and which is no longer subject to challenge." Young asserts that Witte's claims as to the validity of the underlying order are both not properly before this court and without merit.

In his reply brief, Witte raises new arguments, including a claim that Young's initial motion to have him declared a vexatious litigant was itself frivolous. He also continues to attack the underlying order declaring him a vexatious litigant, rather than focusing his arguments on the showing that must be made to relieve him of his status as a vexatious litigant.

---

**7** As a general matter, issues pertaining to the underlying July 3, 2008, order are not properly before us. The only matter properly before us on this appeal is the trial court's denial of Witte's latest motion to vacate the order declaring him a vexatious litigant and imposing the prefiling requirement.

11

## I. Standard of Review and Applicable Principles of Law

A prefiling order pursuant to section 391.7 is an injunction. (*Luckett*, *supra*, 161 Cal.App.4th at p. 85.) As such, the decision as to whether to grant Witte's motion to vacate the prefiling order rested in the sound discretion of the trial court, and we review that determination for an abuse of discretion. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849-850; *Union Interchange, Inc. v. Savage* (1959) 52 Cal.2d 601, 606.)

The vexatious litigant statutes "are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants. (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 220-221 [120 Cal.Rptr.2d 879] [(*Bravo*)].)" (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169 (*Shalant*).) "Sections 391 to 391.6 were enacted in 1963, while section 391.7 . . . was added in 1990. (Stats. 1963, ch. 1471, § 1, pp. 3038-3039; Stats. 1990, ch. 621, § 3, pp. 3072-3073.)" (*Shalant*, at p. 1169.)

The trial court found that Witte was a vexatious litigant as that term is defined in section 391, subdivision (b)(3). Under that subsection, a vexatious litigant is defined as a person who, "[i]n any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." (§ 391, subd. (b)(3).)

The statutory scheme contains two remedies to address the problem of vexatious litigants. "First, in pending litigation, 'the defendant may move for an order requiring the plaintiff to furnish security on the ground the plaintiff is a vexatious litigant and has no reasonable probability of prevailing against the moving defendant.' (*Shalant*, *supra*, 51 Cal.4th at p. 1170 [126 Cal.Rptr.3d 98, 253 P.3d 266; § 391.1].) If the court finds in the defendant's favor on these points, it orders the plaintiff to furnish security in an amount fixed by the court. (§ 391.3, subd. (a).) Failure to provide the security is grounds for

12

dismissal. (§ 391.4.)" (*In re Marriage of Rifkin and Carty* (2015) 234 Cal.App.4th 1339, 1345 (*Rifkin*).)

"The Legislature added a second means to counter misuse of the system in 1990, when it enacted section 391.7. (*Shalant*, *supra*, 51 Cal.4th at p. 1170 [126 Cal.Rptr.3d 98, 253 P.3d 266].) ' "Section 391.7 . . . authorizes a court to enter a 'prefiling order' that prohibits a vexatious litigant from filing any new litigation in propria persona without first obtaining permission from the presiding judge. [Citation.]" . . . [¶] Section 391.7 did not displace the remedy provided in sections 391.1 to 391.6 for defendants in pending actions; by its terms it operates "[i]n addition to any other relief provided in this title . . . ." (§ 391.7, subd. (a).) Rather, it added a powerful new tool designed "to preclude the initiation of meritless lawsuits and their attendant expenditures of time and costs." [Citation.]' [Citation.]" (*Rifkin*, *supra*, 234 Cal.App.4th at p. 1345.)

For a time, there was some uncertainty as to the permanency of a declaration that a litigant was vexatious, and the means by which to "erase" such a declaration and a prefiling order. (See generally *Luckett*, *supra*, 161 Cal.App.4th 77; *PBA, LLC v. KPOD, Ltd.* (2004) 112 Cal.App.4th 965.) In *Luckett*, the Court of Appeal, Fourth Appellate District, Division Three, determined that a prefiling order imposed pursuant to section 391.7 is an injunction subject to modification based on change in the facts, change in the law, or the ends of justice. (*Luckett*, at pp. 85, 93.) The *Luckett* court set forth certain factors to consider on an application to vacate a prefiling order. (*Id.* at pp. 93-94.) These factors included: (1) honesty; (2) remorse for the costs of litigation inflicted on the defendants who were the objects of previous lawsuits; (3) restitution toward the previous victims of the vexatious litigant's litigation, including actual payment of cost orders; and (4) some demonstration that the vexatious litigant is abandoning "the habit of suing people as a way of life." (*Ibid.*)

In 2011, the Legislature added section 391.8 to the statutory scheme to specify the means by which vexatious litigants may seek to vacate the prefiling order and remove the

vexatious litigant's name from the Judicial Council's list of vexatious litigants subject to such orders.  (Stats. 2011, ch. 49, § 2.)  The required showing is set forth in section 391.8, subdivision (c), which provides, "A court may vacate a prefiling order and order removal of a vexatious litigant's name from the Judicial Council's list of vexatious litigants subject to prefiling orders upon a showing of a material change in the facts upon which the order was granted and that the ends of justice would be served by vacating the order." (§ 391.8, subd. (c).)  Thus, on his application before the trial court to vacate the prefiling order and remove his name from the Judicial Council's list of vexatious litigants, Witte was required to demonstrate (1) a material change in the facts upon which the July 3, 2008, order was granted, and (2) the ends of justice would be served by vacating that order.  (§ 391.8, subd. (c).)[8]

## II.  Analysis

In essence, the only change in material facts upon which Witte relies is that on July 25, 2008, the court vacated the part of the earlier order that required Witte to post a security.  However, the requirement that Witte post a security was the only part of the July 3, 2008, order affected.  In the July 25, 2008, order vacating the security requirement, the trial court specifically stated that "[a]ll other orders remain in effect."

Witte's arguments are largely addressed to the premise that the requirement that he post a security was, in effect, a statutory condition precedent to the issuance of a prefiling order rather than to the premise that the vacatur of the requirement that he post a security amounted to a material change in facts within the meaning of section 391.8,

---

[8]  Because we find it clear that Witte has failed to establish both that there has been a material change in facts upon which the July 3, 2008, order was granted, and that the ends of justice would be served by vacating that order, we need not determine whether the more detailed and specific *Luckett* factors are appropriately imported into the section 391.8, subdivision (c), analysis.

14

subdivision (c).  Nonetheless, inasmuch as Witte can be deemed to have raised both arguments, we address each one.

With regard to the notion that an order requiring a vexatious litigant to post a security is a condition precedent to the issuance of a prefiling order, or that the latter cannot exist in the absence of the former, Witte places great emphasis on the language in section 391.7, subdivision (a), which provides that a prefiling order may issue "[i]n addition to any other relief provided in this title . . . ."  (§ 391.7, subd. (a).)  He claims that the only possible meaning of this language is that a prefiling order cannot exist in the absence of an order requiring security, and that instead, a prefiling order may only issue "in addition to . . . other relief" actually ordered.  We disagree.

A court's fundamental task in interpreting a statute is " ' " 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.  [Citation.]  We begin by examining the statutory language, giving the words their usual and ordinary meaning.  [Citation.]  If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.  [Citations.]' " ' " (*Burnham v. Public Employees' Retirement System* (2012) 208 Cal.App.4th 1576, 1582-1583.)

Nothing in the plain language of section 391.7, subdivision (a), or the vexatious litigant statutory scheme limits the applicability of the remedy of a prefiling order only to situations where the plaintiff has also been required to post a security.  As the language Witte relies upon states, the Legislature added the option of a prefiling order "[i]n addition to any other relief provided in this title . . . ."  (§ 391.7, subd. (a).)  There is no language in the statutory scheme to mandate, or even suggest, that an order requiring a vexatious litigant to post a security is a condition precedent to the issuance of a prefiling order, as Witte argues.  On the contrary, with regard to possible remedies to address vexatious litigants, "[e]ither the vexatious litigant is required to post security in litigation already ongoing and will lose if he or she doesn't (§§ 391.1-391.6), or is required to obtain permission of a presiding justice of the court where new litigation is to be filed

(§ 391.7), or both."[9] (*Luckett*, *supra*, 161 Cal.App.4th at p. 84.)  Indeed, one of the cases on which Witte principally relies expressly states that defendants may "avail themselves of section 391.7 in order to prevent the filing of yet another lawsuit, without also seeking a bond under section 391.1." (*Bravo*, 99 Cal.App.4th at p. 224.)

We find no support, nor has Witte provided any, for his claim that "the additional relief language of 391.7 has been interpreted to mean that a prefiling order cannot exist without a security order . . . ."  In short, as the trial court found, Witte's claim that an order requiring a plaintiff to post a security is, in essence, a condition precedent to the issuance of a prefiling order pursuant to section 391.7, or that the latter cannot exist in the absence of the former, is without merit.

We also conclude that the court's July 25, 2008, order vacating the security requirement of the July 3 order, and the rationale for that order, did not constitute a material change in facts warranting vacatur of the prefiling order under section 391.8, subdivision (c).  The trial court, upon granting Young's motion, inter alia, to declare Witte a vexatious litigant, required Witte to post a security to insure against the costs of responding to his ex parte application as well as future litigation.  However, before Young was required to respond to the ex parte application, the trial court denied it, rendering the requirement that Witte post a security unnecessary (in the absence of any additional filings by Witte).  Accordingly, the trial court vacated the part of the July 3, 2008, order that required Witte to post a security.

---

[9] "For purposes of the vexatious litigant statutes in general, the term ' "[l]itigation" ' means 'any civil action or proceeding, commenced, maintained or pending in any state or federal court.'  (§ 391, subd. (a).)  The statute governing prefiling orders, however, provides an additional definition of the term:  for purposes of section 391.7, ' "litigation" ' includes any petition, application, or motion other than a discovery motion, in a proceeding under the Family Code or Probate Code, for any order.' (§ 391.7, subd. (d).)" (*Rifkin*, *supra*, 234 Cal.App.4th at pp. 1345-1346.)

16

Thus, the requirement that Witte post a security was not vacated for any reason that would suggest an end to Witte's vexatious ways. Rather, it was vacated merely because the ex parte application to which Young was to respond, and to which the security pertained, was denied as meritless before Young responded. The denial of this application, and the resulting vacatur of the security requirement, neither liberated Witte from his status as a vexatious litigant nor eliminated the requirement for a prefiling order. We conclude that it did not amount to a material change in the facts upon which the prefiling order was granted so as to warrant vacating the prefiling order. (See generally § 391.8, subd. (c).)

Witte relies on no change in facts upon which the prefiling order was granted other than the elimination of the security requirement.[10] Accordingly, because we conclude that this did not constitute a material change in facts upon which that order was granted within the meaning of section 391.8, subdivision (c), we conclude that Witte has failed to satisfy the first prong of the showing he was required to make under that section. Because the showing required by that section reads in the conjunctive, Witte's failure to satisfy the first prong was fatal to his motion to vacate the prefiling order.

In any event, we also consider the second prong, and conclude that the ends of justice would not be served by vacating the prefiling order.

The trial court's order dated July 3, 2008, inter alia, declaring Witte to be a vexatious litigant and imposing the prefiling order exhaustively details the history of vexatious and meritless action pursued by Witte in connection with the underlying probate matter. Without delving into that history in detail, we particularly note Witte's

---

[10] To the extent that Witte contends that the fact that he was awarded attorney fees in the underlying action demonstrates that his litigation was not meritless, and therefore he cannot be deemed a vexatious litigant, he again does not address the proper standard. Moreover, his claim in this regard is without merit, because it is clear that the trial court discounted his claim for fees based on concerns about his competence.

17

voluminous filings; the delay in the underlying probate proceeding which resulted from his actions; his repeated efforts, in the trial court and on appeal, to contest determinations and orders that had long been final; his insistence on attempting to relitigate matters that both had been decided and were beyond the scope of the matters before the trial court, as made clear by the court's in limine rulings; his refusal to accept the trial court's direction as to the proper scope of matters before the court; his pursuit of matters concerning which he lacked standing; his efforts to serve subpoenas on individuals in connection with these matters; his persistence in continuing to endeavor to represent the purported interests of Leus after his license to practice law had been suspended; and, arguably most telling, his statement in his ex parte application that "[t]he documents need to be preserved as evidence in this case or for other litigation that may result from this case."

The record is devoid of any showing that Witte has abandoned his vexatiousness. Indeed, even in advancing the instant motion, both before the trial court and before this court on appeal, Witte seems simply unable to stop himself from, yet again, arguing the merits of the underlying probate estate proceedings and the original order declaring him a vexatious litigant.

Accordingly, we conclude that Witte also failed to satisfy the second prong under section 391.8, subdivision (c), by showing that the ends of justice would be served by vacating the prefiling order.

Because Witte failed to satisfy either of the two prongs necessary for him to obtain relief from the prefiling order, we conclude that the trial court did not abuse its discretion in denying his motion.

## DISPOSITION

The court's denial of Witte's motion to vacate the order declaring him a vexatious litigant and imposing a prefiling order is affirmed.  Young shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                        MURRAY          , J.



We concur:



     BLEASE          , Acting P. J.



     NICHOLSON     , J.